UNITED STATES

v.

**Technical Sergeant Victoria C. ISLER,
FR063–46–6603, United States Air
Force.**

ACM 29476.

U.S. Air Force Court of Military Review.

Sentence Adjudged 6 June 1991.

Decided 3 March 1993.

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens and Major Marilyn A. Gordon.

Appellate Counsel for the United States: Lieutenant Colonel Brenda J. Hollis, Lieutenant Colonel Mark C. Ramsey, Major Paul H. Blackwell, Jr., and Captain David C. Wesley.

Before O'HAIR, SNYDER and GRUNICK, Appellate Military Judges.

## OPINION OF THE COURT

SNYDER, Judge:

The main issue in this case is whether altering a personal copy of an Air Force Form (AF Form) 899 [1] constitutes the wrongful alteration of a public record in violation of Article 134, 10 U.S.C. § 934? We hold it does not.

Tried by military judge sitting as a general court-martial, appellant was convicted, in accordance with her pleas, of desertion, possession of a false identification card, willfully and unlawfully altering a public record, and four specifications of making and uttering insufficient funds checks with intent to defraud.[2] She was sentenced to a dishonorable discharge, 3 years confinement, total forfeitures, and reduction to E–1.

In addition to three other assignments of error, appellant avers her pleas to specifi-

cation 2, Additional Charge I, are improvident, in that the document which she admitted altering is not a public record, her admission and concession at trial notwithstanding. We agree.

## I. PROVIDENCY OF PLEAS

On or about 20 August 1990, appellant deserted from the Air Force Systems Command Regional Hospital, Eglin Air Force Base (AFB), Florida. She remained absent until her apprehension near Sheppard AFB, Texas on 22 February 1991. A subsequent search of her apartment in Ft. Worth, Texas, revealed the altered AF Form 899. The form in its original, unaltered, state authorized appellant's 1989 reassignment from Clark Air Base (AB), Republic of Philippines (RP), to Eglin AFB, Florida. Appellant changed the form to reflect authorization for reassignment from Eglin AFB to Carswell AFB, Texas, with a reporting date of not later than 29 October 1990. Although appellant admitted she altered the form with an intent to deceive at some unspecified time and event, she never used or attempted to use the altered form.

The offense appellant was convicted of is proscribed by clauses 1 and 2 of Article 134. *See United States v. Maze,* 21 U.S.C.M.A. 260, 45 C.M.R. 34 (C.M.A.1972). One commits the offense by willfully and unlawfully altering, concealing, removing, mutilating, obliterating, destroying, or taking a public record with the intent to do either of those prohibited acts. MCM, Part IV, paragraph 99b (1984). "Public records are defined as follows:

> "Public records" include records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth the activities of the office or agency, or matters observed pursuant to duty imposed by law as to which matters there was a duty to report. "Public records" includes classified matters.

1. Request For And Authorization For Permanent Change Of Station, Military. *See* Air Force Regulation (AFR)10–7, *Administrative Orders,* para. 2–17, and fig. 2–1.1 (Sept 1986). In mili-

tary jargon, they are commonly referred to as "PCS Orders."

2. In violation of Articles 85, 134, and 123a, UCMJ, 10 U.S.C. §§ 885, 934, and 923a (1988).

MCM, Part IV, paragraph 99c (1984). This definition is taken from Mil.R.Evid. 803(8). MCM, Appendix 21 at A21–104 (1984). A properly completed, authenticated, and issued AF Form 899 is an administrative special order published to change the status of military personnel on active duty, *i.e.*, assignment or reassignment. Air Force Regulation 10–7, *Administrative Orders*, para. 1–1a (Sept 1986). Consequently, if otherwise authenticated, an AF Form 899 authorizing a Permanent Change of Station (PCS) can qualify under Mil. R.Evid. 803(8)(A) as evidence of an activity of the Air Force, and therefore, a public record. However, that does not conclude our inquiry, for PCS orders are issued in numerous copies, and appellant altered a copy apparently remaining from those validly distributed to her for her personal use in accomplishing the sundry items and tasks accompanying her PCS from Clark AB, R.P.

■ Appellant argues that her personal copies of her orders fall outside the MCM's definition of public record. Relying on decisions of our sister service Courts of Review, appellant avers her action did not disturb the integrity of the actual public record of her PCS from Clark AB, RP, to Eglin AFB, FL. *See United States v. Osborn*, 32 M.J. 854 (N.M.C.M.R.1991); *United States v. Oglivie*, 29 M.J. 1069 (A.C.M.R.1990).

In *Oglivie*, the Court considered the alteration of a personal copy of a divorce decree. It rejected the argument that the inclusion of the term "in any form" in the definition of public records makes the military offense all inclusive. *Oglivie*, 29 M.J. at 1071. The Army Court construed the term to mean only that records preserved in any form other than paper qualify, *e.g.*, computer disks, video tape, etc. The only additional breadth accepted by the Army Court is the military offense's proscription

of altering a record, which is absent from 18 U.S.C. § 2071.[3] Consequently, the Army Court refused to extend the statute to reach a personal copy. It reserved, for another day, the question of whether alteration of an officially authenticated copy commits the offense. *Oglivie*, 29 M.J. at 1972.

In *Osborn*, the Navy Court considered a copy of a divorce decree which it assumed *arguendo* was an officially authenticated copy, which Osborn placed in her service records. The Navy Court adopted the Army's reasoning and, concluding Osborn's action did not disturb the integrity of the original on file in Tennessee, held altering even an official copy did not commit the offense. *Osborn*, 32 M.J. at 856.

Appellee, however, avers that, due to an erroneous, overly close, comparison to the offense's civilian counterpart,[4] the Army and Navy Courts have applied too restrictive an interpretation of the military offense. Appellee argues PCS orders easily meet the MCM's broad definition of public record. As support for its position that the military offense is much broader than 18 U.S.C. § 2071, appellee emphasizes the fact that the MCM's definition does not require the record to be filed or deposited with a United States agency or office. Further, emphasizing the many functions a member accomplishes with the PCS orders, as well as the various entitlements for which members show eligibility via their PCS orders, appellee avers each copy of the orders is a duplicate original and a public record within the definition of MCM, Part IV, paragraph 99c (1984).

Appellee's argument is alluring. As appellee's brief denotes, our various Air Force agencies accept PCS orders at face value. With PCS orders in hand, a member can obtain shipment of household goods

---

3. 18 U.S.C. § 2071(b) does prohibit a *custodian* from falsifying a document, which approximates an alteration (emphasis added).

4. 18 U.S.C.A. § 2071(a) (1984) provides as follows:
 Whoever willfully and unlawfully conceals, removes, mutilates, obliterates, or destroys, or attempts to do so, or, with intent to do so takes and carries away any record, proceeding, map, book, paper, document, or other thing, filed or deposited with any clerk or officer of any court of the United States, or in any public office, or with any judicial or public officer of the United States....

and, for overseas assignments, one's private vehicle, at government expense, as well as advance travel pay and other pay entitlements to which a reassignment renders a member entitled. Notwithstanding the many doors PCS orders unlock, we are, nonetheless, constrained to disagree with the expansive application urged by appellee.

■ We do not believe MCM, Part IV, paragraph 99b's omission of a requirement for a record to be deposited or filed with an office or agency results in the broad application sought by appellee.[5] The MCM's definition of "public records" clearly envisions documents in possession of an official function. *See* MCM, Part IV, paragraph 99c (1984). Although the level where a public record may be maintained is appropriately low for the military offense, *i.e.,* unit or staff function, we do not construe the definition to lower it to the individual ownership level. *See* Drafters' Analysis, MCM, app. 22 at A22–48. To hold every personal copy of one's PCS orders is a public record would, in effect, make every airman an official custodian of those copies, for we believe that is the only means for imposing individual criminality for not protecting one's personal copies as a public record. Plainly, as currently drafted, there is insufficient notice in the offense to do so. Because MCM, Part IV, paragraph 99 prescribes a criminal offense, in the absence of clear proscriptions, we must restrict its applications to reasonable parameters. *See United States v. Sweitzer,* 14 U.S.C.M.A. 39, 33 C.M.R. 251 (C.M.A.1963).

Public records are generated by official functions' creation of, or acceptance and use of, documents while performing the official activity of the function. Upon the creation or acceptance and use of a document, the document becomes a public record of the function's activity, and the function becomes the repository for the public record. One common repository for the record of the most recent PCS is the member's Field Record Group, which is maintained pursuant to AFR 35–44, *Military Personnel Records System* (Oct 1991). *See* AFR 35–44, atch 1, Item 130.[6]

■ In view of the provisions discussed above, we conclude, and hold, that only those copies of PCS orders received and maintained by official Air Force functions qualify as public records. These functions include Personnel, Accounting and Finance, Transportation Management, and the Unit Orderly Room, among others. Because these various functions effect official actions upon their receipt of PCS orders, the order becomes part of the functions' records of their activity in connection with a reassignment. A copy retained by the individual member does not qualify as a public record.[7]

We agree with the sentiment expressed by our Navy brethren in *Osborn.* It would be an anomaly to convict appellant as charged when she would not have committed a crime had she destroyed her remaining personal copies, or otherwise mutilated them, acts which the charged offense also proscribes. Had appellant attempted to use the altered personal copy of her orders, there are a number of offenses under the UCMJ with which she could have been charged. Appellant's plea of guilty to wrongfully altering a public record, however, is improvident.

In view of the other serious offenses of which appellant stands convicted, we need

---

5. Our sister service Courts' reasoning in *United States v. Osborn,* 32 M.J. 854 (N.M.C.M.R.1991) and *United States v. Oglivie,* 29 M.J. 1069 (A.C.M.R.1990), is persuasive on the issue of civilian documents. For purposes of the instant case, however, we need not decide whether we agree that the military offense of altering a public record is no broader than the civilian offense.

6. Records relating to earlier assignments are retained in the Master Personnel Record Group

maintained by the Air Force Military Personnel Center. *See* AFR 35–44, *Military Personnel Records System,* para. 1–11 (Oct 1991).

7. Unlike the case with a member's military personnel records, medical and dental records, and even the individual military identification card, we are not aware of any statutory or regulatory provision reserving the Government's continuing ownership of personal copies of PCS orders.

not decide whether she committed another, included, offense under Article 134. In the interest of judicial economy, we will dismiss specification 2, Additional Charge I.

## II. ILLEGAL PRETRIAL CONFINEMENT

 Appellant also asserts she is entitled to an additional credit for her pretrial confinement due to conditions of the confinement which deprived her of her right to equal protection under the law. *See* R.C.M. 305(j), (k); U.S. CONST. amend. V. We disagree.

Because the Eglin confinement facility did not have suitable accommodations for female inmates, appellant was confined in the Walton County, Florida, jail pending her trial. Although she testified to periodic overcrowding and sharing an open bay cell with sentenced state prisoners, her main assertion is she was deprived of appropriate exercise, recreation, and opportunity to work outside her cell solely due to her gender. Apparently, the county jail was short of female staff and, to enforce the facility rule requiring no contact with male prisoners, female inmates were not allowed outside where male inmates worked.

Based on the evidence of the conditions in the Eglin confinement facility where male airmen were confined, as compared to the Walton County jail, the trial judge found as follows:

> Through [sic] the disparate treatment is systemic and unintended, the result is discriminatory treatment of Air Force members in the same legal category based upon their gender.

His finding, notwithstanding, the trial judge concluded he was without authority to fashion a remedy for the situation. He based his decision on his conclusion that R.C.M. 305 is drafted to address the sole specific remedy of noncompliance by military authorities with the procedural requirements for entering offenders into pretrial confinement. It is not designed to address the quality of pretrial confinement.

Because we find no merit in appellant's claimed violation of her constitutional rights, we do not address the correctness of the trial judge's view of his lack of authority to fashion a remedy in this situation.

 The proper test to apply is whether appellant's conditions of pretrial confinement were imposed as punishment, or were collaterally incident to valid institutional managerial procedures. *See United States v. James*, 28 M.J. 214 (C.M.A.1989); *United States v. Palmiter*, 20 M.J. 90 (C.M.A. 1985). Applying this test, we hold appellant's conditions of pretrial confinement did not equate to punishment and, therefore, were not a violation of Article 13, UCMJ, 10 U.S.C. § 813 (1988).[8]

The military judge based his findings solely on the fact appellant would have been treated differently in the Eglin facility and the only reason she was not confined therein was her gender. This factor, however, does not equate to punishment. There is no evidence in the record regarding how long the Walton County jail was short of female staff and whether appropriate state or county officials assumed a callous or gross neglectful attitude towards hiring sufficient female staff. Neither is there evidence that Eglin officials contracted with the Walton County jail with an utter disregard for its conditions for female prisoners. We also note that, prior to trial, appellant did not petition the local military magistrate to assess her conditions of confinement. *James*, 28 M.J. at 216. There was, however, evidence that Eglin had designed and obtained approval for construction of a new facility with appropriate accommodations for female inmates. This leads us to conclude that, the trial judge's finding of disparate treatment notwithstanding, appellant's confinement in a local civilian facility was due to limited Air Force

---

8. No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances required to insure his presence, but he may be subjected to minor punishment during that period for infractions of discipline.
Article 13, UCMJ, 10 U.S.C. § 813 (1988).

facilities and not due to any discrimination based on an Air Force made distinction which is so unjustifiable that it violates due process. *See United States v. Rodriguez–Amy*, 19 M.J. 177 (C.M.A.1985).

We find no evidence of any actions by Walton County jail officials which were not reasonably related to the legitimate goal of maintaining the internal order and security of the facility. The conditions therein did not exceed those necessary to assure appellant's presence for trial. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *James*, 28 M.J. 214; *Palmiter*, 20 M.J. 90.

## III. REMAINING ISSUES

We have considered the "jurisdictional issue" raised by appellant and find it without merit. *United States v. Bellett*, 36 M.J. 563, 566–67 (A.F.C.M.R.1992).

■ Appellant also asserts her sentence is inappropriately severe, primarily in that a bad-conduct discharge is more appropriate than a dishonorable discharge. We disagree. The record reflects appellant's claim of serious personal problems, her feelings of depression, and her prior 14 years of excellent service. Unfortunately for appellant, deserting one's unit and duties is one of the prime examples of dishonorable conduct. Further, while fully mindful there is no evidence of an intent to avoid hazardous duty, we cannot ignore the fact that appellant was in desertion during Desert Shield and most of Desert Storm. The record reflects she transitioned rather smoothly to an illicit lifestyle, as evidenced

by the false identification card and the kiting of over $17,000 in fraudulent checks. We find no inappropriate severity in her sentence as adjudged.

## IV. SENTENCE REASSESSMENT

■ Our action on specification 2, Additional Charge I, renders sentence reassessment necessary. Our review of the record convinces us we can fairly assess what appellant's sentence would have been in the absence of this particular offense. *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990). In view of the other very serious offenses of which appellant was convicted, and the fact she never attempted to use the altered PCS order, we are convinced this charge had a *de minimis* impact on the trial judge's fashioning of an appropriate sentence. Therefore, reassessing the sentence, we find it, nonetheless, appropriate.

## V. DECRETAL

Specification 2, Additional Charge I, is dismissed. The findings, as modified, and the sentence, as reassessed, are hereby,

AFFIRMED.

Senior Judge O'HAIR and Judge GRUNICK, concur.