OPINION OF THE COURT
WALBURN, Judge:
A military judge sitting as a special court-martial convicted appellant, pursuant to her pleas, of making false official statements (two specifications), larceny (five specifications), and altering a public record, in violation of Articles 107, 121, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 921 and 934 [hereinafter UCMJ], The military judge sentenced appellant to a bad-conduct discharge, two months hard labor without confinement, two months restriction to the limits of Fort Drum, and forfeiture of $550.00 pay per month for two months. The convening authority approved only so much of the sentence as provides for a bad-conduct discharge and forfeiture of $550.00 pay per month for two months. This case is before the court for review under Article 66, UCMJ, 10 U.S.C. § 866.
Appellate defense counsel assert that the military judge erred by accepting appellant’s guilty plea to altering a public record because the providence inquiry did not establish that the document appellant altered was a “public record.” We agree and find appellant’s guilty plea to that offense improvident, but affirm a finding of guilty to the lesser-included offense of a simple disorder, in violation of Article 134, UCMJ. We will take corrective action in our decretal paragraph.
FACTS
Appellant pleaded guilty to, and was found guilty of, unlawfully altering a public record, specifically a DD Form 689 Individual Sick Slip (sick slip). During the providence inquiry, appellant admitted to falsifying a sick slip by adding the words “No [physical training (PT)] until she finds results out” and by signing the initials “C.J.I.” on the form. She then presented the altered sick slip to her chain of command. Appellant said she altered the document because she “didn’t want to do PT and [she] wanted out of the Army.” Appellant also pleaded guilty to falsely stating to two noncommissioned officers that she was pregnant, had a follow-up appointment at the medical clinic, and had a “no PT profile”[1] until she received her lab results.
During the providence inquiry, the military judge referred to the sick slip as a “public record” without further explanation or discussion. The stipulation of fact refers to the sick slip as a “public record,” but fails to define that term. Appellant told the military judge the document she altered was the “original form.” Appellant also agreed that altering this document was prejudicial to good order and discipline because “you can’t just have everybody going out and changing documents and ... not doing PT, because you need discipline to have a good soldier.”
LAW AND DISCUSSION
A providence inquiry into a guilty plea must establish that the accused believes and admits he is guilty of the offense and the factual circumstances admitted by the accused objectively support the guilty plea. United States v. Garcia, 44 M.J. 496, 497-98 (C.A.A.F.1996). We review a military judge’s acceptance of a guilty plea for an abuse of discretion. United States v. Eberle, 44 M.J. 374, 375 (C.A.A.F.1996). We will not overturn a military judge’s acceptance of a guilty plea unless the record of trial shows a substantial basis in law and fact for questioning the guilty plea. United States v. Jordan, 57 M.J. 236, 238 (C.A.A.F.2002) (citing United States v. Prater, 32 M.J. 433, 436 (C.M.A.1991)).
Altering a Public Record
The elements of the offense of altering a public record in violation of Article 134, UCMJ, are:
(1) That the accused altered, concealed, removed, mutilated, obliterated, destroyed, *629 or took with the intent to alter, conceal, remove, mutilate, obliterate, or destroy, a certain public record;
(2) That the act of the accused was willful and unlawful; and
(3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.
Manual for Courts-Martial, United States (2002 ed.) [hereinafter MCM], Part IV, para. 99(b). This offense is based upon and “is ‘substantially identical’ with the crime denounced by 18 U.S.C. § 2071, [which] is designed to ‘prevent any conduct which deprives the government of the use of its documents ____’ ”[2] United States v. Oglivie, 29 M.J. 1069, 1071 (A.C.M.R.1990) (quoting United States v. Spain, 17 U.S.C.M.A. 347, 38 C.M.R. 145, 1968 WL 5352 (1968) and United States v. Rosner, 352 F.Supp. 915, 919 (S.D.N.Y.1972)), pet. denied 497 F.2d 919 (2d Cir.1974).
The MCM defines the term “public record” as “records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth the activities of the office or agency, or matters observed pursuant to duty imposed by law as to which matters there was a duty to report.” MCM, Part IV, para. 99(c). Based on this definition, three requirements must be met before a document qualifies as a “public record.” First, it must actually be a record or its equivalent. Second, such record must be one of a public office or agency. Finally, the “record” must reflect either: (1) the activities of that office or agency; or (2) matters observed and reported pursuant to a lawful duty.
In the context of a sick slip created under the usual circumstances, we have no question that the third requirement is met. A sick slip, created by medical personnel pursuant to their duties, reflects an observed medical condition. Therefore, the issue of whether such a document qualifies as a public record turns on the first two components of the definition.
As to the first component, a “record” is something which is designed to be a historical memorial of past events. See Black’s Law Dictionary 1279 (7th ed.1999). With regard to a sick slip, two early cases irom the United States Army Board of Review, while not addressing the offense of altering a public record, provide persuasive analysis on the issue of whether such a document is a “record.” In United States v. Sher, 21 C.M.R. 371, 1956 WL 4608 (A.B.R.1956), the board analyzed the charged forgery of a document purporting to excuse the accused from certain duties based on a nervous condition. The board discussed the nature of a sick slip under the then pertinent Special Regulation (SR) 40-600-5, 30 December 1952. The board noted the regulation specifically provided that “[t]he sick slip is not a record and must be destroyed after it conveys information as to the accused’s status. It conveys information, but does not purport, of itself, to ... be capable of being used as evidence of the accused’s physical fitness or status.” Sher, 21 C.M.R. at 373 (internal quotations omitted).
That same year, in United States v. Young, 21 C.M.R. 431, 1956 WL 4619 (A.B.R.1956), the Army Board of Review specifically held that a sick slip had no legal efficacy and, therefore, could not properly be the subject of a forgery charge. The Young board examined the same regulation reviewed in Sher, noting that the regulation described the sick slip as a “medium for the exchange of information between the medical officer concerned and the patient’s unit commander.” Id. at 432. The Young board again recognized that the regulation specifically stated, “The sick slip is not a record” and “will be destroyed as soon as it accomplishes its primary purpose which is to notify a unit commander of the status of a member of his *630 command who has reported sick.” Id. The board further determined that records “kept by the medical facility, are the only official records of the accused’s medical and duty status. The sick slip is for information to the unit commander only.” Id.
While those cases addressed sick slips in the context of the offense of forgery, we find this analysis equally applicable to the present ease, particularly in view of the current regulation regarding the use of a sick slip. Army Reg. 40-66, Medical Record Administration and Health Care Documentation [hereinafter AR 40-66], para. 12-1 (3 May 1999),[3] states that such forms are “a means of communication between the attending [medical] personnel and the unit commander of the military member____” The regulation further provides that “the original of the DD Form 689 will be provided to the patient and the duplicate will be maintained by the patient’s commander” and “[e]ommanders may destroy a DD Form 689 when a temporary profile or quarters status has terminated.” Id. at para. 12-5.
The above-cited language supports the conclusion that the nature and use of sick slips are basically the same now as when Sher and Young were decided in 1956. The purpose of the sick slip is to convey information to commanders concerning a soldier’s health and present physical capabilities. Generally, the soldier/patient hand carries the sick slip to inform his or her commander of information permanently recorded in the patient’s medical file, SF 600, which is an “official” medical record.[4] Commanders may destroy DD Form 689s immediately after a temporary profile or quarters[5] status has terminated. AR 40-66, para. 12-5. Therefore, a sick slip, by its very use and purpose, lacks historical value and does not qualify as a “record” as that term is used in the context of the offense of altering a public record.
However, even if we assume that the document met the definition of a “record” in appellant’s case, we must still determine if it is a public record. “The MCM’s definition of ‘public records’ clearly envisions documents in possession of an official function.” United States v. Isler, 36 M.J. 1061, 1064 (A.F.C.M.R.1993). Documents in “possession of an official function” are those which are “received and maintained” by official public offices and agencies. See id. (stating that “only those copies of [permanent change of station] orders received and maintained by official Air Force functions qualify as public records”); MCM, Part IV, para. 99(c) (stating that “public records” are records “of public offices or agencies”). “Although the level where a public record may be maintained is appropriately low for the military offense, i.e., unit or staff function, we do not construe the definition to lower it to the individual ownership level.” Isler, 36 M.J. at 1064. Consequently, personal copies of records retained by individuals do not fall within the scope of public records.[6] See Oglivie, 29 M.J. at 1072 (unofficial, unauthenticated photocopy of divorce decree was not a public record); Isler, 36 M.J. at 1064 (individual copies of PCS orders are not public records); United States v. Osborn, 32 M.J. 854 (N.M.C.M.R.1991) (“official” copy of divorce *631 decree was not public record). Cf. United States v. McCoy, 47 M.J. 653, 655 (Army Ct.Crim.App.1997) (stating that “the alteration of a copy of someone else’s academic evaluation report does not affect the integrity of Army records concerning Basic Non-commissioned Officers Course graduates unless it is accompanied by an intent, or an attempt, to actually alter the officially maintained records”).
The applicable regulation regarding sick slips states they “will be issued to a patient” and “hand-carried” by either the patient or the patient’s escort. AR 40-66, para. 12-1, 12-5. The original is provided to the patient and, while the regulation states “the duplicate will be maintained by the patient’s commander,” it also states that it may be destroyed when the “profile or quarters status has terminated.”[7] Id. at para. 12-5. We are aware of no requirement that any copy of the sick slip be maintained “in possession of an official function” as a historical memorial of past medical status.
In any event, appellant’s statements during the providence inquiry indicate that, at the time she made the alteration, she was in sole possession of the sick slip. While the government correctly notes appellant altered the only existing copy of the document, this observation undercuts, rather than supports, the argument that the document was a public record. The sick slip was not yet in any respect in the possession of an “official function,” (i.e., received and maintained by an official public office or agency). It is not merely that a document is officially created that makes it a public record, but that it is officially received and maintained. Isler, 36 M.J. at 1064 (stating that “[u]pon the creation or acceptance and use of a document, the document becomes a public record of the function’s activity, and the function becomes the repository for the public record” (emphasis added)).
[3-5] In sum, in order to find that a document or other item is a “public record,” it must: (1) serve as a historical memorial of past events; (2) be received and maintained by a public office or agency; and (3) reflect either the activities of that public office or agency or matters observed and reported pursuant to a lawful duty. Therefore, we hold a DD Form 689, individual sick slip, in the possession of an individual soldier is not a public record as contemplated by Article 134, UCMJ. Accordingly, appellant’s guilty plea to the offense of altering a public record in violation of Article 134, UCMJ, was improvident.[8] Our holding, however, does not relieve appellant of criminal liability for her actions.
Lesser-included Offense
“Any reviewing authority with the power to approve or affirm a finding of guilty may approve or affirm, instead, so much of the finding as includes a lesser included offense.” UCMJ art. 59(b), 10 U.S.C. § 859(b). In this case, appellant was charged with altering a public record in violation of Article 134, UCMJ. A lesser-included offense is a simple disorder, also in violation of Article 134, UCMJ. Cf. United States v. Sapp, 53 M.J. 90 (C.A.A.F.2000); United States v. Augustine, 53 M.J. 95 (C.A.A.F.2000). Conduct violates Article 134, UCMJ, when it is prejudicial to “good order and discipline in the armed forces or is of a nature to bring discredit upon the armed forces.” MCM, Part IV, para. 60(b)(2).
Appellant admitted to altering a sick slip with the intent to avoid physical training, and to aid her discharge from the Army. She further admitted her conduct was prejudicial to good order and discipline. Under these facts, we conclude that the providence inquiry unambiguously established appellant’s guilt to a simple disorder, in violation of *632 Article 134, UCMJ.[9] Cf. Sher, 21 C.M.R. 371, 1956 WL 4608 (overturning conviction for forgery of sick slip, but affirming a conviction for a simple disorder under Article 134, UCMJ).
The remaining assignment of error is without merit. Accordingly, the court affirms only so much of the findings of guilty of the Specification of Charge III and Charge III, as finds that appellant did, at or near Fort Drum, New York, on or about 17 July 2002, wrongfully and unlawfully alter a DD Form 689, Individual Sick Slip, pertaining to the said Private Jessica M. Abbey, by adding the words “No PT until she finds results out” and by signing the initials “C.J.I.,” which conduct was to the prejudice of good order and discipline in the armed forces, in violation of Article 134, Uniform Code of Military Justice.
The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted, the entire record, and applying the principles of United States v. Sales, 22 M.J. 305 (C.M.A.1986), the court affirms the sentence.
Senior Judge SCHENCK and Judge ZOLPER concur.

. A "no PT profile” is a customary Army expression indicating that a soldier has been medically excused from participating in physical training for a defined period of time.

. 18 U.S.C. § 2071(a) provides:
Whoever willfully and unlawfully conceals, removes, mutilates, obliterates, or destroys, or attempts to do so, or, with intent to do so takes and carries away any record, proceeding, map, book, paper, document, or other thing, filed or deposited with any clerk or officer of any court of the United States, or in any public office, or with any judicial or public officer of the United States, shall be fined under this title or imprisoned not more than three years, or both.

. The current version of the regulation contains identical language to that referenced in this opinion. AR 40-66, para. 13-1 and 13-5 (20 July 2004).

. Medical records are public records as defined by the MCM in relation to the offense of altering a public record in violation of Article 134, UCMJ. See United States v. Isler, 36 M.J. 1061, 1064 n. 7 (noting the government's continuing ownership in a military member's medical and dental records).

. A sick slip indicating a soldier is on "quarters" means that the soldier has been medically directed to remain home for a certain period of time.

. We note that our superior court has stated that a copy of a divorce decree was a "public record” in the context of analyzing the issue of whether requiring a person to produce such a document violated the Fifth Amendment privilege against self-incrimination or Article 31, UCMJ, 10 U.S.C. § 831. United States v. Swift, 53 M.J. 439, 453 (C.A.A.F.2000). However, in that context the term "public records” signifies those records which a person is "required to keep, not for his private uses, but for the benefit of the public, and for public inspection.” Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948). The Swift case did not analyze the issue of the meaning of the term in the context of the Article 134, UCMJ, offense of altering a public record. Therefore, we do not find the court's statement in Swift to be determinative in the present case.

. The fact that a duplicate copy of the sick slip is maintained by the patient’s commander only so long as the profile or quarters status is in effect supports the conclusion that these documents serve only as a communication to the commander, allowing him to monitor the current status of the many soldiers he supervises. Once the profile or quarters status has terminated, the sick slip serves no further purpose.

. Altering a sick slip and presenting it to one’s chain of command is more properly charged as a false official statement, in violation of Article 107, UCMJ.

. The facts elicited from appellant during the providency inquiry also satisfy the elements of Article 115, UCMJ, 10 U.S.C. § 815, Malingering. The elements of malingering are:
(1) That the accused was assigned to, or was aware of prospective assignment to, or availability for, the performance of work, duty, or service;
(2) That the accused feigned illness, physical disablement, mental lapse or derangement, or intentionally inflicted injury upon himself or herself; and
(3) That the accused’s purpose or intent in doing so was to avoid the work, duty, or service.
MCM, Part IV, para. 40b. Because we find appellant guilty of a simple disorder we need not analyze the possibility of appellant's guilt as to the offense of malingering under the closely-related offense doctrine.