MARGARET REESE *v.* STATE OF MARYLAND

[No. 834, September Term, 1976.]

*Decided October 13, 1977.*

The cause was argued before MOYLAN, POWERS and LOWE, JJ.

*Walter M. Baker,* with whom were *Baker & Lockhart, P.A.* on the brief, for appellant.

*Bruce C. Spizler, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Floyd L. Parks, State's Attorney for Kent County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

It is not without significance that one searching for the law of forgery under the alphabetized scheme of Article 27 of the Annotated Code of Maryland will not find anything under "F" for "Forgery" or even for "Fraud and Forgery," but must seek it out under the letter "C" for "Counterfeiting and Forgery." Although without any formal status in interpreting legislative intent, of course, that very placement in the Code is nonetheless a telltale, albeit unofficial, clue to the fundamental character of the offense itself.

The appellant, Margaret Reese, the Deputy Treasurer for Kent County, was indicted along with the County Treasurer upon 66 counts, charging primarily embezzlement and forgery. The case involved an elaborate scheme to defraud Kent County of over $10,000. Pursuant to her Suggestion for Removal, the appellant's case was transferred to the Circuit Court for Caroline County for trial. A jury, presided over by Judge K. Thomas Everngam, acquitted the appellant on 58 of the charges but found her guilty on eight counts of forgery. Upon this appeal, she raises two contentions:

1) That the evidence was not legally sufficient to sustain the convictions of forgery; and

2) That the making of false entries in the tax rolls of Kent County does not constitute the forgery of an "acquittance or receipt for money or property" proscribed by Article 27, § 44, of which she was charged and convicted.

In view of our disposition of the case upon the second contention, it is unnecessary to deal with the first. Briefly, however, and in significantly oversimplified form, we will

summarize the criminal scheme in order to set the stage for the consideration of the second contention.

With the County Treasurer, Elizabeth A. Crowding, as the principal criminal agent [1] and with the appellant as a clearly inferable accomplice, an elaborate scheme over a several-year period was put into effect to siphon off money coming into the Kent County Treasurer's Office for tax purposes. In radically simplified form, the scheme worked in the following fashion. We will take initially the tax year that began on July 1, 1973 (1973 tax year). A number of property owners of Kent County came to the Treasurer's Office to pay their property taxes. Many paid by check; many paid in cash. All were given receipts (or acquittances) indicating quite properly that they had paid their taxes in the appropriate amount. The fraudulent scheme involved the unlawful conversion of the cash and the manipulation of the records in the Treasurer's Office to hide that unlawful conversion.

Copies of the original tax bills were kept initially in a file drawer. Upon the payment of the property taxes, these copies were taken out of the file drawer. Their very absence therefrom was one of the indications regularly resorted to to determine that the taxes had been paid. The second and more formal indication was the recording of the payment upon the tax rolls. The appellant was one of several persons who made such recordings.

The normal course of events would have called for a bank deposit slip to have been made out recording the receipts for the day. The slip and the appropriate checks and cash would then be deposited. What in fact happened was that the cash was pocketed. The deposit slips and accompanying adding machine tapes showed the amounts of money that had come in from the taxpayers who paid by check. In the tax records, the checks were used to cover the bills of those who had paid

1. Mrs. Crowding was indicted on 115 counts charging primarily embezzlement and forgery. Her initial trial in Kent County resulted in a hung jury. Upon her retrial in Calvert County, she was convicted of 28 counts of embezzlement and 11 counts of forgery.

in cash. The tax bills of those who had paid in cash were thus marked as paid. Those who had paid by check, however, were not marked as paid. As far as the tax rolls were concerned, those tax bills were still due. Those taxpayers were never alerted to possible danger, however, because the canceled checks they received from the bank indicated to them that all was well. They had no reason to suspect that their checks were applied to other accounts.

As of the end of the first year of the fraudulent scheme, there was clearly criminal embezzlement. There were no false entries, however. The receipts (or acquittances) which were issued to the taxpayers (both those who paid in cash and those who paid by check) were true and correct. The crime with respect to the tax records themselves was to that point only one of omission, the failure to record as paid those bills which had in fact been paid and should have been so recorded.

The first affirmative or written falsity occurred as the fraudulent scheme entered its second year, as property taxes became due for the tax year that began on July 1, 1974 (1974 tax year). Again, the receipts (or acquittances) that were issued to the taxpayers themselves were true and correct. When it came to making entries in the tax rolls, however, a significant amount of the money paid in for the 1974 tax year was falsely recorded as payment for 1973 taxes, which were ostensibly delinquent according to the tax rolls but which had in fact been paid the year before. Some of these entries also falsely showed interest having been paid on the delinquent amounts. Some months later, an audit revealed irregularities, a more intensive investigation was made and the criminal scheme came undone.

The appellant was shown to have been responsible for some of the entries made in the tax rolls which falsely showed 1973 taxes as not having been paid until 1974 and which falsely showed that interest had been paid for the delinquency, when in fact it had not. We are satisfied that the evidence was legally sufficient to permit a jury to find that the appellant perpetrated an embezzlement. She, and Mrs. Crowding, had as agents received money on behalf of

Kent County and the evidence supported a finding that they had unlawfully converted that money to their own use. The appellant, however, was not convicted of embezzlement. She was convicted specifically of unlawfully and falsely making, altering, forging, and counterfeiting certain entries in violation of Article 27, § 44. For two separate reasons, we hold that the convictions cannot stand. We hold that the actions imputable to the appellant, even if fraudulent, did not constitute forgery generally and did not constitute forgery of acquittances or receipts specifically.

Forgery, in its most fundamental character, is not an offense involving false and fraudulent writing generally but is a very specific offense in the nature of counterfeiting. It involves not the making of false entries for fraudulent purposes in an otherwise genuine document but the very manufacturing of a false or spurious document itself. In this regard, Clark and Marshall, *The Law of Crimes* (Sixth Wingersky Edition), is very specific at 845-846:

> "To constitute forgery at common law, there must be a *false making* of an instrument. Mere fraud and false pretenses are not enough. The instrument must be false. It must be made to appear to be other than it really is. It is forgery to sign another man's name to a note, without authority and with intent to defraud, and thus make the instrument appear to be the note of the person whose name is signed; but it is not forgery for a person to sign his own name to an instrument, and falsely and fraudulently represent that he has authority to bind another by doing so, or for a person to sign another's name 'by' himself as attorney in fact, for in such a case the instrument is not falsely made, but is just what it purports to be, and the signer is guilty of false pretenses only. The same is true of à receipt. It is not forgery for a person to falsely and fraudulently represent that he has authority to receive money for another, and to sign, not the other's name, but his own, to the receipt for the money."

LaFave and Scott, *Criminal Law* (1972) makes the same very clear distinction, at 671:

"Forgery is a crime aimed primarily at safeguarding confidence in the genuineness of documents relied upon in commercial and business activity. Though a forgery, like false pretenses, requires a lie, it must be a lie about the document itself: the lie must relate to the genuineness of the document. A foreman who pads the timeroll by crediting himself with working more hours than he actually has worked does not commit forgery, since his lie relates to something other than the genuineness of the timeroll."

Perkins, *Criminal Law* (2nd Ed., 1969), is equally emphatic in distinguishing between false contents in a genuine document and the false making of a spurious document, saying at 345:

*"For forgery it is not sufficent for the writing to tell a lie; the writing itself must BE A LIE."* (Emphasis in original)

"It is an indispensable requirement of forgery that the writing be false. It may have been false in its inception or may have been made so by subsequent tampering with what was originally genuine; but it must be a false writing. In this connection it is essential to distinguish between a false instrument and false statements in an instrument. No amount of misstatement of fact and no amount of fraud will make a false instrument out of what purports to be the very instrument which it is in fact and in law.

"If a man fraudulently executes a deed to real estate with a covenant that it is free and clear of encumbrances, this is a *genuine* deed even if the grantor knows that the land is subject to a heavy mortgage. It is a genuine deed with a false covenant. This is a case of the false making of a

writing with intent to defraud, but it will not support a conviction of forgery because for this purpose it would be necessary to show that the deed itself is false. Typical instances of writings which are falsely made with intent to defraud but are not forgery because they are genuine writings with false statements rather than false writing, are (1) a 'padded' time roll issued by the one authorized to issue it, (2) a warehouse receipt fraudulently issued by a warehouse which did not have the grain purportedly represented thereby, (3) a check wrongfully drawn on a bank in which the drawer has no funds, or insufficient funds, or (4) a false entry made in one's own account book." (Emphasis in original)

The Supreme Court was scrupulously careful to distinguish between the writing of false and fraudulent statements, which is not forgery, and the very making of a spurious or non-genuine document, which is forgery, in *Gilbert v. United States*, 370 U. S. 650, 658, 82 S. Ct. 1399, 8 L.Ed.2d 750, 756 (1962):

"Nor are we impressed with the argument that 'forge' in § 495 should be given a broader scope than its common-law meaning because contained in a statute aimed at protecting the Government against fraud. Other federal statutes are ample enough to protect the Government against fraud and false statements. . . . Still further, it is significant that cases construing 'forge' under other federal statutes have generally drawn a distinction between false or fraudulent statements and spurious or fictitious makings. . . . Where the 'falsity lies in the representation of facts, not in the genuineness of execution,' it is not forgery."

Two state cases, interpreting the general common law of forgery, which still prevails in Maryland, are most lucid in

making the distinction. One of them is *State v. Young*, 46 N. H. 266, 270 (1865):

> "The writing or instrument must in itself be false, not genuine, a counterfeit, and not the true instrument it purports to be."

The other is *De Rose v. People*, 64 Colo. 332, 334, 171 P. 359, 360 (1918):

> "This writing is what it purports to be: a true and genuine instrument, although it contains false statements. It is not a false paper, and the execution of such a document does not constitute forgery. The prosecution failed to distinguish between falsely making an instrument, and making a false instrument, ... A false statement of fact in an instrument, which is itself genuine, by which another person is deceived and defrauded, is not forgery."

Although some states have, with little eye to history, broadened by statute the definition of forgery and are, therefore, in the process of transmuting it from a counterfeiting-type offense into a more general fraud-type offense, Maryland has not done so. In *Smith v. State*, 7 Md. App. 457, 256 A. 2d 357, Chief Judge Murphy lucidly noted that we follow the common law and that the word "forge" in Maryland is synonymous with "falsely make" and with "counterfeit." He said, for this Court, at 7 Md. App. 461-462:

> "By common definition forgery is false making, *Reddick v. State, supra*, and as used in Section 44, we think the terms 'falsely make' and 'forge' are synonymous, both describing a spurious or fictitious making relating to the genuineness of execution of an instrument. See *Marteney v. United States*, 216 F. 2d 760, 763 (10th Cir.). Similarly, the term 'counterfeit' in common parlance signifies the fabrication of a false image or representation; counterfeiting an instrument means falsely making

it . . . . It was noted in *Arnold v. Cost, supra,* that 'the counterfeiting of any writing with a fraudulent intent whereby another may be prejudiced, is forgery at common law.' The words 'forged' and 'counterfeited' as used in a statute creating the offense of passing 'forged, counterfeited or falsely altered instruments' have been held to be synonymous. *Hobbs v. State,* 9 Mo. 855. And in *Greathouse v. United States,* 170 F. 2d 512 (4th. Cir.), it was held that under the National Stolen Property Act which penalizes the transportation of 'falsely made, forged, altered or counterfeited securities' the quoted words were ejusdem generis and usually employed to denounce the crime of forgery. In light of these principles, and bearing in mind that as originally enacted in 1799, Section 44 was . entitled 'An act for the more effectual preventing of forgery,' we think the terms 'falsely make, forge or counterfeit,' as used in the Section, are virtually synonymous and were collectively intended to proscribe the crime of forgery."

We hold that in this case the making of false entries in the tax rolls may well have been fraudulent but was not a forgery. There was no manufacturing or counterfeiting of a spurious or non-genuine tax roll; there was merely the making of false statements in a genuine document.

*Judgments reversed; costs to be paid by County Commissioners for Kent County.*