NORRIS, Judge.
The defendant, Wayne Shows, was charged by indictment with injuring public records by intentionally removing and concealing a check and documentation of Morehouse General Hospital (“MGH”) Service District in violation of LSA-R.S. 14:132. After being found guilty as charged by a six-member jury, he was sentenced to pay a fine of $1,500 or, in default of payment, to serve one year in jail; and to serve 18 months in jail. The mandatory 18-month sentence was suspended and a supervised probation of two years was imposed, subject to general and special conditions. Shows now appeals, raising four assignments of error:
(1) The jury was improperly impaneled;
(2) The statute, LSA-R.S. 14:132, is unconstitutional for overbreadth;[1]
(3) The trial court improply overruled a motion to quash based on the running of prescription; and
(4) The state did not prove every element of the offense charged.
We conclude that Shows’s fourth assignment of error has merit and, accordingly, we reverse the conviction and order Shows discharged.
*993 FACTS
Wayne Shows served as director of MGH from approximately 1963 until May 12, 1983. The hospital was originally governed by a board of commissioners created by the Morehouse Parish Police Jury, but in late 1982 the operation was transferred to a Hospital Service District. A new commission took over on January 1, 1983 and was invested with the powers and duties provided under state law, LSA-R.S. 46:1051 et seq.
In contrast with his apparently smooth working relationship with the previous board, Shows had serious conflicts with some of the newly-appointed commissioners. The condition deteriorated and, at its meeting of April 5, 1983, the commission passed a motion to terminate Shows’s employment immediately. It also sent a resolution passed April 7, 1983 to Bastrop National Bank that resulted in Shows no longer having authority to sign MGH checks. Shows left and took with him a check for $166,000, representing salary and retirement benefits to which he felt he was entitled under an employment contract. Within a week of passing the resolution terminating Shows, however, the commission realized it could not legally function without a director; on April 12 it met again and rescinded its prior resolution. Shows was unwilling to return to what he considered a hostile situation, but after lengthy discussions with District Attorney Johnny Carl Parkerson [2] he was persuaded to return to the post on at least an interim basis. He voided and returned the check. The commission, however, never rescinded its notice to Bastrop National Bank, and the order removing Shows’s power to sign MGH checks actually went into effect in late April. In the beginning of May, in fact, the bank’s executive vice-president, Mr. Farrar, called Shows to tell him he had received the notice.
After serving a few weeks on what he considered to be a temporary basis, Shows determined he would resign. On May 2, the very day Mr. Farrar called him about signing MGH checks, Shows instructed his associate administrator, Mrs. Reeves, to write him a check for $152,343.70, according to his revised calculation of his due under the contract. The check was drawn on MGH’s general fund and made payable to Aetna Life Insurance and Annuity Company for Shows’s annuity account. It was signed on a check-writing machine by Mrs. Reeves and by Shows, even though a valid check could be signed only by Mrs. Reeves, Mrs. Holen or Mr. Smith (any two of the three). Shows carried off both the original copy of the check, which he hand-delivered to his insurance agent, and the duplicate, which normally would have been retained in the course of hospital business. A week later, on May 9, he submitted a letter of withdrawal, effective on May 12, from his agreement with the District Attorney.
When Shows left for good on May 12, Mrs. Reeves reported the check incident to the District Attorney. Shows returned the duplicate or check stub to the hospital on May 19, after being asked, but took no action on the original, feeling he was by contract entitled to the money. On May 13, the District Attorney placed a stop order on the check, and the issue of the contract was litigated in a civil trial.[3]
The indictment charged Shows with removing and concealing “records and documentation” of the check for $152,343.70. It further alleged that under the authority of the Hospital Service District statute, LSA-R.S. 46:1051 et seq., and the Public Records Law, LSA-R.S. 44:1, the check record and documentation had been filed or deposited with a public officer, the More-house Parish Hospital Service District. Trial was held on May 19-22, 1986, and Shows was found guilty as charged.
*994 DISCUSSION
Because we find merit in Shows’s fourth assignment, we will pretermit discussion of the other three.
By his fourth assignment, Shows contends there was no evidence adduced at trial to prove him guilty of each element of the crime charged. We are therefore required to decide whether the evidence, viewed in light most favorable to the prosecution, does not reasonably permit a finding of guilty. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The crime of injuring public records is defined in LSA-R.S. 14:132 as follows:
Injuring public records is the intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record, document, or other thing, filed or deposited, by authority of law, in any public office or with any public officer.
Whoever commits the crime of injuring public records shall be imprisoned for not more than five years with or without hard labor or shall be fined not more than five thousand dollars or both.
Thus the essential elements of the crime have been isolated as follows: (1) intentional removal or concealment; (2) of a public record; (3) the public record has been filed or deposited; (4) the filing or depositing was by authority of law; and (5) the filing or depositing is in a public office or with a public officer. See State v. Gomez, 433 So.2d 230 (La.App. 1st Cir.1983), writs denied 440 So.2d 730 and 441 So.2d 747 (La.1983).
Shows specifically contends that the state did not demonstrate that the check or its duplicate or both were “filed or deposited by authority of law” and “in any public office or with any public officer.” This contention has merit.
We conclude that the element “filed or deposited, by authority of law,” requires more than a mere physical placing or keeping in storage in a public office or with a public officer. LSA-R.S. 14:132 contemplates either that the law expressly mandate or permit the filing or depositing of the record in question and that there be in addition some official act of filing or depositing. Unless these requirements are met, there is no violation of the statute; consequently we have focused directly on these requirements.
The state argues that even if the check itself is not a public record, then at least the duplicate is. Indeed, the record tends to establish that the duplicate would be retained in the normal course of the hospital’s business and would serve as a record of the transaction. However, to meet the criteria of R.S. 14:132, the document must be filed or deposited by authority of law. The state cites LSA-R.S. 46:1051-1064 and R.S. 44:1-37 as establishing the authority of law. R.S. 46:1051 through 1064 are the statutory authority for creating hospital service districts. Specifically, R.S. 46:1057 imposes certain record-keeping duties on the hospital’s director. In pertinent part, it is the director’s duty
(9) To control and direct all business affairs of the district. By way of extension and not of limitation, these duties shall include the keeping of the accounts of the district, making necessary purchase of equipment, supplies and materials, making major and minor repairs to physical facilities.
(10) To receive and receipt for and keep a correct accounting of all gifts, bequests, grants-in-aid, and other revenues received by the district and with the consent of the commission, to expend the proceeds of all such gifts, bequests, grants-in-aid and other revenues for the purpose designated in this chapter and subject to any conditions that may be imposed in any act of donation or any law providing grants-in-aid or other revenues for such purpose.
(11) To perform any other duties and functions which he or the commission consider necessary or desirable to carry out the purposes of this chapter.
While this statute definitely imposes a duty of maintaining books and records, neither it nor any other statute in the chapter *995 prescribes the formal filing or depositing of checks or their duplicates. This requirement is crucial.
Other cases in which convictions have been affirmed involved the mutilation or falsifying of records whose filing or depositing had been clearly and specifically authorized by law. For example, in State v. Brown, 467 So.2d 1151 (La.App. 2d Cir.1985), writ denied 474 So.2d 945 (La.1985), the defendant was charged with mutilating the police arrest book. This “book” is required to be maintained and kept on file according to LSA-C.Cr.P. art. 228. In State v. Fraley, 499 So.2d 1304 (La.App. 4th Cir.1986), the defendant was charged with falsifying a permanent fingerprint record, such as may be filed by authority of LSA-R.S. 15:582.[4] In both instances, R.S. 14:132 was made operative by a clear pronouncement of positive law, either expressly mandating or permitting the filing or depositing of the document involved.
By contrast, in State v. Gomez, supra, the defendant, a junior high school principal, was charged with removing and concealing “checkbooks, ledgers, deposit books, and invoices” from his school. Our brethren of the first circuit noted several statutes that regulated the principal’s duty with respect to these documents but could not find any that mandated filing or depositing. 433 So.2d at 240. The court reasoned that without a statute that directed filing of these documents, the most that could be said is that they were “in the possession of a public office or public officer” and that R.S. 14:132 does not make the reinoval of such items a crime.
Gomez is almost identical to the instant case. Admittedly, the prosecution in Gomez did not ask for judicial notice of statutes that might activate R.S. 14:132, but the court nevertheless considered several statutes that might possibly apply. In the instant case we have scanned the statutes to which the state referred both at trial and on appeal, R.S. 46:1051 through 1064, and we cannot find any law expressly requiring or permitting checks or their duplicates, written in the course of business of the hospital service district, to be filed or deposited at the hospital’s office.
We have likewise studied R.S. 44:1 through 37 to see whether they establish a requirement or even a means of filing a public record. These statutes, however, only define in broad terms what should be considered a public record,[5] delineate various exceptions, impose a duty of preservation and create a right of access and inspection. They do not clearly define which of these items should or may be filed or deposited in contemplation of R.S. 14:132. This does not satisfy the criminal statute.
We have also considered the state’s contention that the mere act of writing a check effects a filing or depositing of the duplicate. Even assuming that authority of law permitted or mandated filing or depositing the duplicate at the hospital, we can discern no genuine act of filing or depositing. If the issue of what constitutes filing or depositing is a close one, it should be construed in favor of the accused. LSA-R.S. 14:3; State v. Butler, 331 So.2d 425 (La.1976); State v. Young, 357 So.2d 503 (La.1978); State v. Saibold, 213 La. 415, 34 So.2d 909 (La.1948). Such a *996 “mere act” of writing a check is obviously inadequate to satisfy the requirements of LSA-R.S. 14:132.
Looming over the state’s argument from R.S. 44:1 is the grossly ultra vires nature of the check to start with. By May 2, Shows had no authority to sign any of MGH’s checks, and yet the check he is charged with having removed and concealed is one that he signed. We are reluctant to say that a crime could be committed with a document that never truly became a public record because it was an invalid document. See LSA-R.S. 14:132, Official Revision Comment, citing People v. Wise, 3 N.Y.Crim. 303 (1885).
This is not to say that the state was without recourse for Shows’s activities. Like the court in Gomez, we have noted that several statutes might define as criminal the actions of Shows. For instance, removal of the check’s duplicate, even an undeposited and unfiled item, might still be unauthorized use of a movable, LSA-R.S. 14:68. Failure of the director to enter a debit on the books of the hospital might be malfeasance in office. LSA-R.S. 14:134. Failure of any public officer to deliver an official document to his successor in office is a crime, as is the act of taking any document or writing pertaining to his office away from the place where it is usually kept. LSA-R.S. 42:322. Violation of any of the provisions of the public records law by one having custody and control of the public record is a crime under LSA-R.S. 44:37. And Shows’s entire scheme to take such a large sum of money from MGH’s general fund might even have amounted to attempted theft, LSA-R.S. 14:67 and 27. Indeed, the state perfected several other charges which prescribed for lack of timely prosecution. We can appreciate how this general aura of unauthorized activity, together with certain credibility problems cited in the state’s supplemental brief, might have led the jury to return its verdict of guilty.
However, the state cannot argue that general unlawfulness entitles it to a verdict of guilty. The state has not cited us to any statute that expressly mandates or permits a filing or depositing of a check or its duplicate, drawn on a hospital service district’s general fund, with a public office or officer. Furthermore, there was no act of filing or depositing in the instant case.
Under these circumstances, the facts viewed in light most favorable to the prosecution do not support the conviction. An essential element of the crime was not proved beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Gomez, supra. The conviction must be reversed and the defendant is ordered discharged.
CONVICTION REVERSED; DEFENDANT ORDERED DISCHARGED.

. Shows’s counsel conceded at oral argument that this assignment actually raised the issue of vagueness under State v. Cannon, 383 So.2d 389 (La.1980), cert. denied 454 U.S. 1052, 102 S.Ct. 596, 70 L.Ed.2d 587 (1981).

. The District Attorney serves as regular attorney and counsel for the hospital service district unless the commission relieves him of this duty. LSA-R.S. 42:261 A and I.

. Shows’s contract of employment was held partially unenforceable. The appellate decision affirming the trial court is reported as Shows v. Morehouse Gen'l Hosp., 463 So.2d 884 (La.App. 2d Cir.1985), writs denied 464 So.2d 1385 (La.1985).

. The opinion in Fraley does not cite this statute but filing is permitted.

. LSA-R.S. 44:1 A(2) provides as follows:
(2) All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoran-da, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt of payment of any money received or paid by or under the authority of the constitution or the laws of this state, are "public records," except as otherwise provided in this Chapter or as otherwise specifically provided by law. (emphasis added).