758 A.2d 84

**STATE of Maryland**

v.

**John E. BRANTNER, Jr.**

**No. 135, Sept. Term, 1999.**

Court of Appeals of Maryland.

Aug. 23, 2000.

Leigh S. Halstad, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Md., on brief), Baltimore, for Appellant.

No argument on behalf of Appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

BELL, Chief Judge.

The issue this case presents is whether a photocopy of a letter, written by a judge and sent to the parties to the case over which the judge was presiding, is, while in the possession, lawfully obtained, of the defendant, a public record, the willful and unauthorized alteration of which is proscribed by Maryland Code (1957, 1996 Repl.Vol.) Art. 27, § 45A (b).[1] Concluding that it is not, the Circuit Court for Washington County dismissed that charge against John E. Brantner, the appellee, who had altered such a letter, and the State noted its appeal. We granted certiorari on our own motion while the case was pending in the Court of Special Appeals. We agree with the Circuit Court and, therefore, affirm the judgment of that court.

## I.

On August 21, 1997, the appellee was a defendant in the case of *State v. Brantner*, No. 19914, a criminal case which was then pending in the Circuit Court for Washington County. By letter of that date, the Honorable John H. McDowell, a

---

1.  That statute provides, in part:
    "(a) *Definitions.*—For the purposes of this section, the following words have the meanings indicated.
        "(1) 'Public record' includes all official books, papers, or records whether kept on a manual or automated basis, which are created, received, or used by the State or any agency thereof, a bicounty or multicounty agency, and county, municipality, or other political subdivision.
        "(2) 'Access' means to instruct, communicate with, store data in, retrieve data from, or otherwise make use of equipment including, but not limited to, computers and other data processing equipment or resources connected therewith.
    "(b) *Prohibited conduct.*—It is unlawful for a person to do or attempt to do the following:
        "(1) Wilfully make a false entry in any public records;
        "(2) Except under proper authority, wilfully alter, deface, destroy, remove, or conceal any public record; or
        "(3) Except under proper authority, wilfully and intentionally access public records.
    "(c) *Penalty.*—Any person who violates this section is guilty of a misdemeanor and may be imprisoned up to 3 years or fined up to $1,000, or both."

judge of that court, wrote to Gordon A. Lynn, the attorney representing appellee in the case, with respect to scheduling in that case, sending copies of the letter to the State's Attorney's Office, the appellee, the Sheriff's Department, the Assignment Clerk, and the Clerk of the Court. As written by Judge McDowell, the letter read:

"Please note that the Court has scheduled a modification hearing on September 8, 1997, at 9:00 a.m., for the above-captioned case. Please make arrangements to be in court on that date and time. Thank you for your cooperation."

On the copy he received, appellee deleted the date and the text of the letter, replacing the text with the following:

"As per the case scheduled for September 1997, a Stay was placed on the charges, and the probation, due to extenuating circumstances. As of October 15, 1998, Mr. John E. Brantner, Jr. was completely exonerated of all charges, pertaining to case No: 19914 CT."

As a result, the appellee subsequently was charged with violation of Article 27, § 45A (b). That section prohibits any wilful alteration, defacement, destruction, removal, or concealment of any public record.

Following trial, the Circuit Court expressed dismay that the appellee "presumably altered one of its colleague's letters for his own personal benefit" and found that the appellee's actions were "immoral, fraudulent and downright childish in nature." Nevertheless, the court agreed with appellee that a photocopy of a judge's letter did not constitute a "public record" within the ambit of § 45A (a)(1) and, thus, its alteration "simply [does] not constitute a violation of Article 27, section 45A." It reasoned:

"The definition of public record in Article 27, section 45A is somewhat modified and limited by the adjective 'official'. It says 'official books, papers or records.' And the term 'official' relates to someone holding office. In this case, the official public record is the copy of Judge McDowell's letter maintained by the clerk of court. Interestingly, the definition of public record in Article 27, section 45A does not

include photocopies. However, in section 10–611(f) of the State Government Article, the General Assembly specifically included photocopies in the definition of public record in that article. In Article 27, section 45A, the legislature chose not to .include 'photocopy' within the definition of public record. In this case, if the allegations are true, the defendant would presumably be guilty of uttering a willfully altered or defaced public record if such a crime existed in Maryland. The term uttering means to circulate as if authentic or genuine. However there is no such crime as uttering forged public records in Maryland, although there is such a crime in Virginia [2] and some other jurisdictions.[3] "

**2.** *See* Va. Code Ann. § 18.2–168 (Michie 1999). That statute provides:
"If any person forge a public record, or certificate, return, or attestation, of any public officer or public employee, in relation to any matter wherein such certificate, return, or attestation may be received as legal proof, or utter, or attempt to employ as true, such forged record, certificate, return, or attestation, knowing the same to be forged, he shall be guilty of a Class 4 felony."
Intent to defraud is an element of the offense. *Campbell v. Commonwealth*, 14 Va.App. 988, 421 S.E.2d 652, 654 (1992), *aff'd*, 246 Va. 174, 431 S.E.2d 648 (1993).

**3.** E.g. Fla. Stat. Ann. § 831.02 (West 1999), which provides:
"Whoever utters and publishes as true a false, forged or altered record, deed, instrument or other writing mentioned in s. 831.01 knowing the same to be false, altered, forged or counterfeited, with intent to injure or defraud any person, shall be guilty of a felony of the third degree, punishable as provided in § 775.082, § 775.083, or § 775.084."
*See Parker v. State*, 658 So.2d 1105, 1106 (Fla.App.1995). *See also* Mich. Comp. Laws Ann. § 750.248 (West 1999), which provides:
"(1) Any person who shall falsely make, alter, forge, or counterfeit any public record, or any certificate, return, or attestation of any clerk of a court, public register, notary public, township clerk, or any other public officer, in relation to any matter wherein such certificate, return, or attestation may be received as legal proof, or any charter, deed, will, testament, bond, writing obligatory, letter of attorney, policy of insurance, bill of lading, bill of exchange, promissory note, or any order, acquittance of discharge for money or other property, or any waiver, release, claim or demand, or any acceptance of a bill of exchange, or indorsement, or assignment of a bill of exchange or promissory note for the payment of money, or any accountable receipt for money, goods, or other property, with intent

## II

The State challenges the Circuit Court's premise, that § 45A (a)(1)[4] does not include within its reach copies or photocopies of official documents. It argues that the statute is not under-inclusive, as it clearly covers "all" official papers, "whether kept on a manual or automated basis," thus including copies. The only limitation § 45A (a)(1) imposes, the State asserts, is that the public records be "created, received, or used by the State or any agency thereof. . . ." Therefore, it submits, unlike Md.Code (1957, 1996 Repl.Vol.) § 10–611(f) of the State Government Article,[5] upon which the court and the appellee rely and which specifically includes the term "copy" in its definition of "public record," given the use of the term "all,"encompassing both categories, there was no need to specify in § 45A (a)(1) that it covered originals as well as copies. Contrary to the appellee's argument, the State argues that if the Legislature had wanted to limit § 45A (a)(1) to the

to injure or defraud any person, shall be guilty of a felony, punishable by imprisonment for not more than 14 years."

4. Maryland Code (1957, 1996 Repl.Vol.) Article 27, § 45A (a)(1) provides:

"all official books, papers, or records whether kept on a manual or automated basis, which are created, received, or used by the State or any agency thereof, a bicounty or a multicounty agency, any county, municipality, or other political subdivision."

5. The relevant portion of the statute reads:

"(f) Public record.—(1) "Public record" means the original or any copy of any documentary material that:

(i) is made by a unit or instrumentality of the State Government or of a political subdivision or received by the unit or instrumentality in connection with the transaction of public business; and

(ii) is in any form, including:

1. a card;
2. a computerized record;
3. correspondence;
4. a drawing;
5. film or microfiche;
6. a form;
7. a map;
8. a photograph or photostat;
9. a recording; or
10. a tape . . ."

originals of public records, it would have so stated explicitly or, at least, more clearly.

Noting the purpose of the statute, to criminalize the alteration, defacement, removal, or destruction of any public record and the necessity for the court, in the fulfillment of its duties, to communicate with all parties, the accomplishment of which frequently requires that copies or photocopies of official documents be sent to those parties, the State maintains that the appellee's removal of the official text of the letter, replacing it with his own, was an attempt to pass off as official a false statement exonerating himself. Thus, it asserts, though quickly found out, the appellee's use of the official letterhead, found on the court generated document, as well as his misappropriation of Judge McDowell's signature, illustrates an intent, i.e. a wilfulness, to: make a false entry in a public record; alter a public record; and intentionally access a public record. Consequently, as the State sees it, the appellee's actions violated not some, but all three of the actions prohibited by § 45A (a)(1). It also urges that, if the Court were to hold that the appellee was immune from punishment because the document he altered was a copy and not an original, anyone who would alter a document created and issued by the State would simply copy it before making the alterations and, thereby, avoid the reach and the penalties of § 45A.

## III

The issue this Court must resolve involves statutory interpretation. We approach that task by seeking to discern the intent of the Legislature in enacting the statute. *Handy v. State,* 357 Md. 685, 704, 745 A.2d 1107, 1117 (2000) (Court's paramount objective is to ascertain and effectuate intent of legislature when it enacted statute.) This requires reading and interpreting the entire statute, neither adding, nor deleting, words in order to give it a meaning not otherwise evident by the words actually used. *Harris v. State,* 331 Md. 137, 145, 626 A.2d 946, 950 (1993); *Bd. of Educ. of Garrett County v. Lendo,* 295 Md. 55, 63, 453 A.2d 1185, 1189 (1982); *Smelser v. Criterion Ins. Co.,* 293 Md. 384, 389, 444 A.2d 1024, 1027

(1982). The search for legislative intent begins by looking first at the words of the statute. *Williams v. Mayor & City Council of Baltimore,* 359 Md. 101, 115, 753 A.2d 41, 49 (2000) ( Legislative intent must be sought first in actual language of statute.). If, giving the words used by the Legislature their ordinary and common meaning, see *Derry v. State,* 358 Md. 325, 335, 748 A.2d 478, 483 (2000) ( As a rule, the Court of Appeals views the words of a statute in ordinary terms, in their natural meaning, in the manner in which they are most commonly understood), the statute is clear, we need look no further. *Adamson v. Correctional Medical Services, Inc.,* 359 Md. 238, 251, 753 A.2d 501, 508 (2000) (If the Legislature's intentions are evident from the text of the statute, a court's inquiry will normally cease and the plain meaning of the statute will govern); *Williams v. Mayor & City Council of Baltimore,* 359 Md. at 116, 753 A.2d at 49 (2000) (Where statutory language is plain and free from ambiguity, and expresses a definite and simple meaning, court normally does not look beyond words of statute to determine legislative intent) Only if the words of the statute are ambiguous need we seek the Legislature's intent in the legislative history or other extraneous sources. *Marsheck v. Board of Trustees of Fire & Police Employees' Retirement System of City of Baltimore,* 358 Md. 393, 403, 749 A.2d 774, 779 (2000) (If statute's language is ambiguous, court will look towards other sources, such as relevant case law and legislative history, to aid in determining legislature's intentions); *Resper v. State,* 354 Md. 611, 619, 732 A.2d 863, 867 (1999) (If a statute contains an ambiguity, the court must look to not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment in order to find a construction that best realizes the legislative intent) Moreover, construction requires that the statute be given a reasonable interpretation, not one that is illogical or incompatible with common sense. *D & Y, Inc. v. Winston,* 320 Md. 534, 538, 578 A.2d 1177, 1179 (1990); *Blandon v. State,* 304 Md. 316, 319, 498 A.2d 1195, 1196 (1985); *Erwin and*

*Shafer, Inc. v. Pabst Brewing Co.,* 304 Md. 302, 315, 498 A.2d 1188, 1194 (1985).

█ Section 45A (a)(1) is clear and unambiguous in the statement of the requirements of a public record. To be a public record as defined by that section, the "official books, papers, or records" must have been "created, received, or used by the State or any agency thereof" and kept, "whether ... on a manual or automated basis," by the State or the governmental agency creating, receiving or using them. The latter requirement is not stated as directly as the former, but it is nevertheless clear beyond cavil that it is prescribed by the statute. The reference to "manual or automated basis," addressing the manner in which the governmental entity retains the official document, not the manner in which it is generated, a meaning that is confirmed by the Legislature's use of the term, "kept," in connection with the phrase, is necessary only if the keeping or retention of the records is an essential requirement of the definition. This is further confirmed by the fact that, to read the statute as the State proposes would render the phrase, "whether kept on a manual or automated basis," meaningless and mere surplusage.

Moreover, under the State's interpretation, not only the record retained by the official or agency, but all copies generated and disbursed by the official or agency pursuant to the official's or agency's official duties would be "public records." Taking that interpretation to its logical conclusion, any copy of any public record in the hands of the recipient would be subject to the proscriptions of § 45A (b), so that any such recipient who wilfully alters the copy in possession would be guilty of a violation of that section, notwithstanding that the copy in the hands of the governmental agency remains fully intact and in no way compromised. This is so because, logically, the violation would occur at the moment the alteration is made and notwithstanding the intent with which the alteration was made or whether the altered document is published or circulated. There simply is no requirement in § 45A (a)(1) that the accused have an intent to defraud by

means of the alteration or even that the altered document be circulated or published.

Recognizing, apparently, that an interpretation of the statute to mean that the mere alteration of a copy of a public record in the hands of a third party is actionable [6] defies common sense, the State at oral argument made clear that its argument is not so limited. Rather, acknowledging the importance to the proper functioning of the government of having accurate copies of government-related records, it maintained that it is the manner in which the altered record is used or attempted to be used that is dispositive. That argument was rejected by the Circuit Court. We do, as well. By its very terms, which, as we have seen, are not ambiguous, § 45A (a)(1), as we have also observed, prohibits the wilful alteration of a public document. It does not prescribe the purpose for which the alteration must be made to be actionable or the manner in which the altered document must be used. We shall not add an element to the statute to make criminal what otherwise would not be, or to give to the statute a meaning that it does not have.

The legislative history of section 45A and the interpretation other courts have given similar, although admittedly not identical, statutes confirm our interpretation. Section 45A was enacted in 1979, in response to the decision by the Court of Special Appeals in *Reese v. State*, 37 Md.App. 450, 378 A.2d 4 (1977).[7] At issue in that case was the sufficiency of the

---

6. It is likely that, as the trial court indicated, the file copy of the judge's letter is a public record, having been created by an agent of the State and, because explanatory of a portion of the proceedings, required to be kept, by the State.

7. In addition to a copy of *Reese*, (with the portions pertinent to the subject of the proposed bill and notations on file copies of the proposed bills to the effect, "37 Md.App. 450, 378 A.2d 4 ") and "Reese case Ct of Spec Apps 2 yrs ago," there is in the bill file a hand written memorandum as follows:

"This Bill provides . . . a fine of $1000 or imprisonment up to 3 years or both for conviction of doing certain acts to public records. There are various penalties provided throughout the Code for specific records. This Bill responds to the result in the Reese Case where the

evidence to sustain the conviction of the accused pursuant to Maryland Code (1951, 1976 Repl.Vol.) Art. 27, § 44 of forgery of an "acquittance or receipt for money or property," which that section proscribed. Although it was clear that accused was shown to have been responsible for some of the false entries made in the tax rolls, the court reversed the accused's conviction, holding that,

> "The actions imputable to the [accused], even if fraudulent, did not constitute forgery generally and did not constitute forgery of acquittances or receipts specifically.
>
> Forgery, in its most fundamental character, is not an offense involving false and fraudulent writing generally but is a very specific offense in the nature of counterfeiting. It involves not the making of false entries for fraudulent purposes in an otherwise genuine document but the very manufacturing of a false or spurious document itself."

*Reese,* 37 Md.App. at 454, 378 A.2d at 6, *citing* Clark and Marshall, The Law of Crimes (Sixth Wingersky Edition) at 845–846, *noting,* LaFave and Scott, Criminal Law (1972) at 671 and Perkins, Criminal Law (2nd Ed., 1969) at 345. Thus, the court reasoned:

> "that in this case the making of false entries in the tax rolls may well have been fraudulent but was not a forgery. There was no manufacturing or counterfeiting of a spurious or non-genuine tax roll; there was merely the making of false statements in a genuine document."

*Reese* at 458, 378 A.2d at 8. Section 45A fills the gap which *Reese* identified. It is significant that in *Reese* the documents altered were clearly public records, tax rolls. Thus, there is no indication that the General Assembly was intending to do more than that, fill that gap, or that it intended to broaden the

---

Defendant admittedly altered County records for personal gain but whose conviction was set aside by the Appellate Court because her actions did not fall within the statutory definition of forgery.... There are 2 Committee Amendments to this Bill. Amend. No. 1 combines [can't make out] definition of Public Records & Political Subdivision. Amend. No. 2 added "Duplicate" to the offensive acts."

definition of public records. In that regard, it is also interesting that one of the states to which the court looked in reaching its decision was Colorado. That State was also mentioned in the legislative history file, in the context of indicating that the Colorado statute was similar to what was proposed by § 45A.[8]

The Colorado statute that is similar to § 45A is Colo.Rev. Stat. Ann. § 18–8–114. Captioned "Abuse of public records," it provides:

"(1) A person commits a class 1 misdemeanor if:

"(a) The person knowingly makes a false entry in or falsely alters any public record; or

"(b) Knowing the person lacks the authority to do so, the person knowingly destroys, mutilates, conceals, removes, or impairs the availability of any public record; or

"(c) Knowing the person lacks the authority to retain the record, the person refuses to deliver up a public record in the person's possession upon proper request of any person lawfully entitled to receive such record; or

"(d) Knowing the person has not been authorized by the custodian of the public record to do so, the person knowingly alters any public record.

"(2) As used in this section, the term "public record" includes all official books, papers, or records created, received, or used by or in any governmental office or agency."

Although not involving this statute, the Supreme Court of Colorado has addressed the issue of what constitutes a public record. In *People v. Trujillo,* 185 Colo. 14, 521 P.2d 769, 770 (1974), the court construed the phrase, "of or belonging to any public office within this state." In that case, a probation officer who submitted an application for chief probation officer containing two material misrepresentations, was charged with violating 1967 Perm. Supp., C.R.S.1963, 40–7–9, which provided:

---

**8.** On the copy of the proposed bill containing the citation to *Reese, i.e.* "37 Md.App. 450[, 378 A.2d 4]," immediately following Section 2, are the handwritten words, "similar to Colorado."

"Officer purloining records—penalty. If any judge, sheriff, coroner, clerk, recorder, or other public officer, or any person whatsoever, shall steal, fraudulently convert, alter, corrupt, withdraw, falsity, or avoid, any record, process, charter, gift, grant, conveyance, bond, or contract, or shall knowingly and willfully take off, discharge, or conceal any issue, forfeited recognizance, or other forfeiture, or shall forge, deface, or falsify any document or instrument recorded, or any registry, acknowledgment, or certificate, or shall alter, deface, of falsify any minute, document, book, or proceeding whatever, Of or belonging to any public office within this state, the person so offending upon conviction shall be punished by confinement in the state penitentiary for a term not less than one year nor more than seven years."

Affirming the dismissal of the charges, the court held:

"that a violation of Section 40–7–9 occurs only where a person falsifies or otherwise corrupts a record which is in, or is required by law to be in, the custody on control of a public agency at the time of falsification. The statute does not apply to a situation like that present here, where, when falsified, the application for the position sought did not belong to any public office within this state."

This interpretation was supported by the two cases that previously had addressed the issue: *Downing v. Brown*, 3 Colo. 571 (1877) and *Shimmel v. People*, 108 Colo. 592, 121 P.2d 491 (1942). In, *Downing*, the court determined that a personal book kept by a probate judge "for his own information and convenience which contained records not germane to his office was not a public record." *Trujillo*, 521 P.2d at 770. Citing *Shimmel*, the *Trujillo* court held that unused civil service examinations were not public records, reasoning that "the statute was designed to inhibit the alteration of records which were prepared by, and in, the custody of a public agency." *Id.* at 770.

The Colorado "Abuse of public records statute," § 18–8–114(2) is consistent; its definition of public records as "official

books, papers, or records created, received, or used by or in any governmental office or agency" evidences the same focus and rationale. Section 45A's definition of public records is quite similar. In fact, by referencing the manner in which the records are kept, it is more precise in that regard than the Colorado law.[9] This confirms the interpretation we have given § 45A. *See also* Ariz.Rev.Stat. Ann. § 13–2407(B) (West 1999), defining "public record," as used in subsection (A) of that statute,[10] to mean "all official books, papers, written instruments or records created, issued, received or kept by any governmental office or agency or required by law to be kept by others for the information of the government;" Mo. Ann. Stat. 575.010(8) (West 1999), limiting "public record" to "any document which a public servant is required by law to keep;" Neb.Rev.Stat. § 28–911(2) (1999), defining "public record" to include "all official books, papers, or records created, received, or used by or in any governmental office or agency." [11]

---

**9.** The reason for the reference is perhaps provided in the letter from Delegate Hargreaves, then Chairman of the House Committee on Appropriations, to Senator J. Joseph Curran, then Chairman of the Senate Judicial proceedings Committee, in which the Appropriations Committee asked the Judicial Proceedings Committee to address the matter of the "insufficient criminal penalties to deter individuals from: 1) fraud by use of a computer; 2) making or attempting to make false entries; and 3) altering or destroying public records."

**10.** Ariz.Rev.Stat. Ann. § 13–2407(A) (West 1999) provides:

"A. A person commits tampering with a public record if, with the intent to defraud or deceive, such person knowingly:

"1. Makes or completes a written instrument, knowing that it has been falsely made, which purports to be a public record or true copy thereof or alters or makes a false entry in a written instrument which is a public record or a true copy of a public record."

**11.** The contexts of other statutes indicate that they require a consistent interpretation. *See* Mass. Gen. Laws Ann. ch. 267 § 1 (West 2000), providing:

"1. False or forged records, certificates, returns, attestations and other writings—

"Whoever, with intent to injure or defraud, falsely makes, alters, forges or counterfeits a public record, or a certificate, return or attestation of a clerk or register of a court, public register, notary

public, justice of the peace, town clerk or any other public officer, in relation to a matter wherein such certificate, return or attestation may be received as legal proof; or a charter, deed, will, testament, bond or writing obligatory, power of attorney, policy of insurance, bill of lading, bill of exchange or promissory note; or an order, acquittance or discharge for money or other property or a credit card or an instrument described as a United States Dollar Traveller's Check or Cheque, purchased from a bank or other financially responsible institution, the purpose of which is a source of ready money on cashing the instrument without identification other than the signature of the purchaser; or an acceptance of a bill of exchange, or an endorsement or assignment of a bill of exchange or promissory note for the payment of money; or an accountable receipt for money, goods or other property; or a stock certificate, or any evidence or muniment of title to property; or a certificate of title, duplicate certificate of title, certificate issued in place of a duplicate certificate, the registration book, entry book, or any indexes provided for by chapter one hundred and eighty-five, or the docket of the recorder; shall be punished by imprisonment in the state prison for not more than ten years or in jail for not more than two years.;"

N.J. Stat. Ann. § 47:3–29 (West 1999):

"Any person who, without the consent of the person authorized to have custody thereof, removes an official record or paper from the files of any public agency or body, or who.alters any map, plat, or other paper signed and approved by a public official without permission, or who alters, defaces, mutilates or destroys with malicious intent any public record shall be guilty of a high misdemeanor;"

N.Y. Penal Law § 175.20 (McKinney 2000):

"A person is guilty of tampering with public records in the second degree when, knowing that he does not have the authority of anyone entitled to grant it, he knowingly removes, mutilates, destroys, conceals, makes a false entry in or falsely alters any record or other written instrument filed with, deposited in, or otherwise constituting a record of a public office or public servant . . .;"

Or.Rev.Stat. § 162.305 (1999):

"(1) A person commits the crime of tampering with public records if, without lawful authority, the person knowingly destroys, mutilates, conceals, removes, makes a false entry in or falsely alters any public record, including records relating to the Oregon State Lottery;"

Pa. Stat. Ann. Tit. 18 § 4911 (West 1999):

"(a) Offense defined.—A person commits an offense if he:

"(1) knowingly makes a false entry in, or false alteration of, any record, document or thing belonging to, or received or kept by, the government for information or record, or required by law to be kept by others for information of the government;

"(2) makes, presents or uses any record, document or thing knowing it to be false, and with intent that it be taken as a genuine part of information or records referred to in paragraph (1) of this subsection;"

S.C.Code Ann. § 30–1–30 (Law Co-op 2000):

"A person who unlawfully removes a public record from the office where it usually is kept or alters, defaces, mutilates, secretes, or

That interpretation is also shared by other courts that have confronted the issue. In *People v. Parks*, 7 Cal.App.4th 883, 9 Cal.Rptr.2d 450 (1992), for example, the issue was whether a falsified temporary restraining order was, at the time the defendant altered it, a "public record," within the meaning of Cal. Gov't Code § 6201,[12] proscribing a non custodian's alteration or destruction of public records. *Acknowledging, citing People v. Garfield*, 40 Cal.3d 192, 219 Cal.Rptr. 196, 707 P.2d 258, 260 (Ca.1985) (holding with respect to a will altered before it was offered for filing, that "[a] will is not a public document before it is filed for probate."), the accuracy of the defendant's observation that a document requires to be filed does not become a public record until it is filed, the court rejected the defendant's argument in that case "because the signed genuine TRO Parks obtained from Judge Mason was, when obtained, part of a court file." *Parks* at 888, 9 Cal. Rptr.2d 450. It explained:

"In this case Parks altered an original court record which had been stamped with a case number and the day and date and signed by a judge, although thereafter it was to be

destroys it is guilty of a misdemeanor and, upon conviction, must be fined not less than five hundred dollars nor more than five thousand dollars or imprisoned not more than thirty days. Magistrates and municipal courts have jurisdiction to try violations of this section."

**12.** Ca. Gov't Code § 6201 provides:

"Every person not an officer referred to in Section 6200, who is guilty of any of the acts specified in that section, is punishable by imprisonment in the state prison, or in a county jail not exceeding one year, or by a fine not exceeding one thousand dollars ($1,000), or by both such fine and imprisonment."

Section 6200, in turn, provides:

"Every officer having the custody of any record, map, or book, or of any paper or proceeding of any court, filed or deposited in any public office, or placed in his or her hands for any purpose, is punishable by imprisonment in the state prison for two, three, or four years if, as to the whole or any part of the record, map, book, paper, or proceeding, the officer willfully does or permits any person to do any of the following:

"(a) Steal, remove, or secrete.
"(b) Destroy, mutilate, or deface.
"(c) Alter or falsify."

returned to the clerk's office for filing and obtaining of conformed copies of the original for further use. Under prior case authority, "there can be no doubt that court records are public records" (*Estate of Hearst* (1977) 67 Cal.App.3d 777, 782, 136 Cal.Rptr. 821) and the documents in a court file are "public records." (*People v. McKenna* (1953) 116 Cal.App.2d 207, 211, 255 P.2d 452.) When Parks obtained and then falsified this public record he committed the offense proscribed by Government Code sections 6200–6201."

*Id.* at 888, 9 Cal.Rptr.2d 450 (footnote omitted).

Injuring public records is a crime in Louisiana. As defined in La.Rev.Stat. Ann. 14:132 (West 1999), it is "the intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record, document, or other thing, filed or deposited, by authority of law, in any public office or with any public officer." In *State v. Shows,* 508 So.2d 991 (La.App. 2d Cir.1987), the court delineated the elements of the crime:

"(1) intentional removal or concealment; (2) of a public record; (3) the public record has been filed or deposited; (4) the filing or depositing was by authority of law; and (5) the filing or depositing is in a public office or with a public officer."

*Id.* at 994, *citing State v. Gomez,* 433 So.2d 230 (La.App. 1st Cir.1983), *writs denied* 440 So.2d 730 and 441 So.2d 747 (La.1983). The court commented specifically on the 4th element:

"We conclude that the element "filed or deposited, by authority of law," requires more than a mere physical placing or keeping in storage in a public office or with a public officer. LSA–R.S. 14:132 contemplates either that the law expressly mandate or permit the filing or depositing of the record in question and that there be in addition some official act of filing or depositing. Unless these requirements are met, there is no violation of the statute; consequently we have focused directly on these requirements".

Of significance to the case *sub judice,* the *Shows* court was clear and emphatic in its statement that that element applied equally to the duplicate of a document, even when "the record tends to establish that the duplicate would be retained in the normal course of . . . business and would serve as a record of the transaction." *Id.* at 994.

The Military courts are in agreement. In *United States v. McCoy,* 47 M.J. 653, 656 (1997), the U.S. Army Court of Criminal Appeals, construing Article 134 of the Uniform Code of Military Justice, 10 U.S.C. § 934, held that "the mere completion of a blank form indicating graduation from an Army school and presentment of that document to military officials as proof of such schooling does not constitute the offense of wrongfully altering a public record." In reaching its conclusion, the court pointed out, *citing United States v. Spain,* 17 U.S.C.M.A. 347, 38 C.M.R. 145, 146–47, 1968 WL 5352 (1968), and *United States v. Oglivie,* 29 M.J. 1069, 1071 (A.C.M.R.1990), that the article 134 offense was derived from 18 U.S.C. § 2071(a) [13], the intent of which is to ' "prevent any conduct which deprives the government of the use of its documents." ' *Id.* at 664, *quoting Oglivie,* 29 M.J. at 1071 (*citing United States v. Rosner,* 352 F.Supp. 915, 919 (S.D.N.Y.1972), petition denied, 497 F.2d 919 (2d Cir.1974)). Thus, it opined, "[t]he essence of the Article 134, UCMJ, offense is whether the charged misconduct disturbs the integrity of the public record itself." *Id.* at 654–55. To like effect is *United States v. Isler,* 36 M.J. 1061 (1993). In that case the issue was whether the alteration of the personal copy of a permanent change of station order constituted the wrongful alteration of a public record,[14] in violation of Article 134.

---

**13.** 18 U.S.C. § 2071(a) provides:

"Whoever willfully and unlawfully conceals, removes, mutilates, obliterates, or destroys, or attempts to do so, or, with intent to do so takes and carries away any record, proceeding, map, book, paper, document, or other thing, filed, or deposited with any clerk or officer of any court of the United States, or in any public office, or with any judicial or public officer of the United States, shall be fined under this title or imprisoned not more than three years, or both."

**14.** "Public record" was defined as:

Concluding that it did not, but acknowledging that the definition of "public records" envisions documents in possession of an "official function," *id.* at 1064, the court explained:

> "Although the level where a public record may be maintained is appropriately low for the military offense, *i.e.*, unit or staff function, we do not construe the definition to lower it to the individual ownership level.... To hold every personal copy of one's PCS orders is a public record would, in effect, make every airman an official custodian of those copies, for we believe that is the only means for imposing individual criminality for not protecting one's personal copies as a public record. Plainly, as currently drafted, there is insufficient notice in the offense to do so. Because MCM, Part IV, paragraph 99 prescribes a criminal offense, in the absence of clear proscriptions, we must restrict its applications to reasonable parameters."

In so concluding, the court rejected arguments quite similar to those made by the State in this case. *Id.* at 1064. *See United States v. Osborn*, 32 M.J. 854 (N.M.C.M.R.1991) (alteration of officially authenticated copy of divorce decree in possession of the service person not a public record); *United States v. Oglivie*, 29 M.J. 1069 (A.C.M.R.1990) (alteration of personal copy of divorce decree not a public record).

■ Given the legislative history of the statute, as well as the reasoning behind similar statutes, it is thus clear that the purpose of the § 45A (a)(1) is protection of those public records in official custody, and not the protection of personal, officially generated copies of public records.

JUDGMENT AFFIRMED, WITH COSTS.

---

"includ[ing] records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth the activities of the office or agency, or matters observed pursuant to duty imposed by law as to which matters there was a duty to report [and] classified matters."