[No. D014160. Fourth Dist., Div. One. June 24, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
MEECEE PARKS, Defendant and Appellant.

884

COUNSEL

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Steven H.

Zeigen, Carl H. Horst and M. Howard Wayne, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

NARES, J.—Meecee Parks (Parks) appeals following his conviction by jury of two counts of filing a false instrument in violation of Penal Code section 115, subdivision (a),[1] one count of battery in violation of section 242, and one count of altering a public record in violation of Government Code section 6201. We affirm.

### Background[2]

On the morning of August 14, 1990, Parks went to visit his former girlfriend and the mother of his child, Donna Vanessa Parks (Donna). Donna's current boyfriend, Maurice Bell (Bell), told Parks that Donna did not want to speak with him. Parks then threatened and battered Bell, and thereafter attempted to stuff him into the trunk of an automobile.

On the morning of August 17, three days later, Parks went to family law court to obtain an order to show cause (OSC) and temporary restraining order (TRO). At an ex parte hearing that afternoon Judge Wesley Mason signed a TRO presented by Parks enjoining Donna from contacting or harassing him.

Parks later presented an OSC and signed TRO for filing, and then delivered a copy of the TRO to the marshal's office for filing. The unusual form of the TRO presented caused Sergeant Edmonds of the marshal's office to contact the court. After obtaining Judge Mason's signature on the TRO, Parks had altered the instrument to include the following false requirements: (1) that Donna and Bell vacate their residence, and (2) that Bell stay away from both Parks and Donna.

### Discussion

Parks argues as a matter of law the altered TRO was neither (1) an "instrument" under section 115, subdivision (a) nor (2) a "public record" under Government Code section 6201. We disagree.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

[2] As the appeal presents questions of law only, we set forth only such facts as provide a context for the legal argument.

## I. Penal Code Section 115, Subdivision (a)

 The section in question since 1872 has proscribed knowingly offering "any false or forged instrument to be filed" which (if genuine) could be filed under any law. Violation is a felony. Parks argues that early case interpretations of section 115, followed in a 1977 appellate decision, require us to set aside his conviction in the present matter. The People, on the other hand, rely upon a more recent interpretation of section 115, which interpretation has been followed in this district.

An early decision of our Supreme Court interpreting the word "instrument" *as used in the Civil Code* defined it as a "written paper or instrument signed and delivered by one person to another, transferring the title to or creating a lien on property, or giving a right to a debt or a duty." (*Hoag* v. *Howard* (1880) 55 Cal. 564, 565.) This definition of the word "instrument" was later adopted and modified in an appeal from a demurrer to a prosecution under section 115, with the appellate court there holding an "instrument" was an "agreement expressed in writing, signed, and delivered from one person to another, transferring the title to or creating a lien on real property, or giving a right to a debt or duty. [Citations.]" (*People* v. *Fraser* (1913) 23 Cal.App. 82, 85 [137 P. 276].) (The *Fraser* court held, relying for support upon a case from New Jersey concerning the collection of fees for filing an "instrument," that a birth certificate was not an "instrument" as the word was so defined.)

Parks relies extensively upon *People* v. *Fox* (1977) 73 Cal.App.3d 178, 180-182 [140 Cal.Rpr. 615], which followed *Fraser* and held a false voter registration affidavit, like a birth certificate, was not an "instrument" under section 115. In particular, Parks reads into that court's reference to prolonged legislative inaction and stare decisis (*id.* at p. 181) a requirement the restrictive definition of "instrument" used therein now be treated as binding. For several reasons, we disagree.

In *Generes* v. *Justice Court* (1980) 106 Cal.App.3d 678, 682-684 [165 Cal.Rptr. 222], it was argued the *Fraser* definition of "instrument" as an "agreement" which was "delivered from one person to another" precluded conviction for filing a false grant deed. Pointing to *Fraser's* distortion of the language used in *Hoag* v. *Howard, supra,* 55 Cal. 564 (which in any event had not involved § 115) the *Generes* court held "that to qualify as an instrument within Penal Code section 115, a document need not represent an agreement; moreover it is not necessary that such a document be one that requires a delivery as a condition to validity." (*Generes* v. *Justice Court, supra,* 106 Cal.App.3d at p. 684.)

Parks relies on a point made in *People* v. *Fox, supra,* 73 Cal.App.3d at page 181, concerning legislative approval by prolonged inaction. ▇ But "legislative acquiescence in prior judicial decisions is not conclusive in determining legislative intent. . . . In the area of statutory construction, an examination of what the Legislature has done (as opposed to what it has left undone) is generally the more fruitful inquiry." (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1156 [278 Cal.Rptr. 614, 805 P.2d 873].) ▇ Here, the Legislature did extensively amend section 115 in 1984 (Stats. 1984, ch. 1397, pp. 4905-4908), after the decision in *Generes,* and for our purposes the *Generes* definition may thus now be presumed to have legislative approval.

In any event, as there is no precedent which is directly controlling, we must now determine whether the Legislature *intended* that documents *such as those before us* were to be within the statute's proscription. ▇ Where, as here, there can be more than one interpretation of "instrument," "we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied . . . and the statutory scheme of which the statute is a part." (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1008 [239 Cal.Rptr. 656, 741 P.2d 154].)

▇ As enacted in 1872, section 115 was one of five sections (§§ 113, 114, 115, 116, and 117) which formed chapter 4 of the Penal Code. Chapter 4 was and is entitled "Forging, Stealing, Mutilating, and Falsifying Judicial and Public Records and Documents." The "ostensible objects to be achieved" were the integrity of "judicial and public records." The "evils to be remedied" clearly included "forging, stealing, mutilating, and falsifying" such records. Whatever else may be meant by the word "instrument," on these facts we find that protection of judicial and public records such as the documents in this case was clearly within the legislative intent of section 115.

We note also that Division Two of this court, in *People* v. *Garcia* (1990) 224 Cal.App.3d 297, 306-307 [273 Cal.Rptr. 666], followed and cited *Generes* while affirming section 115 convictions for filing false bail bonds. While we recognize the principle relied on by Parks, to the effect that penal statutes should be construed as favorably to a defendant as the language permits (see, e.g., *People* v. *Davis* (1981) 29 Cal.3d 814, 828 [176 Cal.Rptr. 521, 633 P.2d 186]), we see no reason to interpret the plain wording of the statute here in such a restrictive fashion. Parks "knowingly . . . offer[ed] a[ ] false . . . instrument to be filed" and thus may properly be found "guilty of a felony." (§ 115, subd. (a).) As did the trial court, we find *Generes* persuasive, and in accord with the legislative intent.

## II. GOVERNMENT CODE SECTION 6201

Parks next asserts the falsified TRO was not a "public record" at the time he altered it, and thus his conduct is not within the proscription of Government Code sections 6200-6201. In support of this proposition he points to *People* v. *Garfield* (1985) 40 Cal.3d 192 [219 Cal.Rptr. 196, 707 P.2d 258]. There, our Supreme Court held, with respect to a will altered *before* it was offered for filing, that "[a] will is not a public document before it is filed for probate." (*Id.* at p. 195.) As the Attorney General points out, however, *Garfield* is of no assistance in the present matter, because the signed genuine TRO Parks obtained from Judge Mason was, *when obtained*, part of a court file. (Judge Mason testified the "original" TRO stays in the court file, while a copy goes to the marshal's office.)

In this case Parks altered an original court record which had been stamped with a case number and the day and date and signed by a judge, although thereafter it was to be returned to the clerk's office for filing and obtaining of conformed copies of the original for further use. Under prior case authority, "there can be no doubt that court records are public records" (*Estate of Hearst* (1977) 67 Cal.App.3d 777, 782 [136 Cal.Rptr. 821]) and the documents in a court file are "public records." (*People* v. *McKenna* (1953) 116 Cal.App.2d 207, 211 [255 P.2d 452].)[3] When Parks obtained and then falsified this public record he committed the offense proscribed by Government Code sections 6200-6201. For this reason we reject his contention to the contrary.

### DISPOSITION

The judgment is affirmed.

Kremer, P. J., and Work, J., concurred.

---

[3]See also *The Copley Press, Inc.* v. *Superior Court* (1992) 6 Cal.App.4th 106, 111-115 [7 Cal.Rptr.2d 841].