Filed 5/29/13  P. v. Aguayo CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JESUS DURAN AGUAYO, et al., <br><br> Defendants and Appellants. | B236827 <br><br> (Los Angeles County <br> Super. Ct. Nos. BA382793/BA327051) |

APPEAL from judgments of the Superior Court of Los Angeles County. Larry P. Fidler, Judge.  Affirmed as modified.

Robert Derham, under appointment by the Court of Appeal, for Defendant and Appellant Jesus Duran Aguayo.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant Sofia Aguayo.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and Herbert S. Tetef, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jesus Duran Aguayo and Sofia Aguayo appeal from the judgments upon their respective multiple convictions and sentences for filing false tax returns, conspiracy to file false tax returns, filing 19 Preliminary Change of Ownership Reports ("PCOR") containing false information in Los Angeles County Recorder's Office in violation of Penal Code[1] section 115 and conspiracy to file false documents. Specifically they assert that their convictions on the counts alleging a violation of section 115 must be reversed as a matter of law because a PCOR does not constitute an "instrument" subject to section 115. In addition, they claim that the trial court imposed unauthorized sentences when it ordered them to surrender their real estate licenses and to refrain from obtaining real property through adverse possession. As we shall explain, a PCOR constitutes an instrument under section 115 because the information contained in a PCOR is used by public agencies to determine the appropriate property tax to assess to real property transfers and thus the reliability of the information disclosed in a PCOR affects the integrity of the public tax rolls. Nonetheless, Aguayos' contention about their sentences has merit. Accordingly, we modify their sentences and affirm the judgment in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### Appellants' Real Estate Business

Since the late 1980s appellants, who are also married, worked as licensed real estate agents. Mr. Aguayo was also a real estate broker. Their business consisted of acquiring distressed properties, usually through adverse possession. Some of the properties they acquired they would fix and sell and others they kept as rental properties; appellants managed over 100 rental properties between 1992 and 2006.

---

[1] All references to statute are to the Penal Code unless otherwise indicated.

[2] The facts and background described here relate only to those convictions that appellants have challenged on appeal.

2

**Background on the Purpose and Function of PCORs**

In connection with obtaining the properties through adverse possession, appellants filed a quitclaim deed along with a PCOR with the Los Angeles County Recorder's office for each property. Pursuant to Revenue and Taxation Code section 480, a change of ownership statement must be filed whenever there is a change of ownership of real property. (Rev. & Tax. Code, § 480.)

Under Revenue and Taxation Code section 480.3 a PCOR may be submitted to the recorder's office with a deed when a deed is recorded: "Each county assessor and recorder shall make available, without charge and upon request, a form entitled 'Preliminary Change of Ownership Report,' which transferees of real property shall complete and may file with the recorder concurrent with the recordation of any document effecting a change in ownership. The form shall be signed by the transferee or an officer of the transferee certifying that the information provided on the form is, to the best of his or her knowledge and belief, true, correct, and complete." (Rev. & Tax. Code, § 480.3, subd. (a).)

The purpose of the change of ownership statement, and more specifically the PCOR is to aid the county assessor in carrying out the assessor's statutory function under Revenue and Taxation Code section 75.10 to appraise the value of property changing ownership. In fact, according to the legislative history of Revenue and Taxation Code section 480.3, in enacting the PCOR, the Legislature declared: "It is the intent of the Legislature, in enacting Sections 1 and 2 of this act, to establish an additional aid to each assessor in expediting compliance with Section 75.10 of the Revenue and Taxation Code with respect to real property which changes ownership, thereby improving cash flows and increasing revenues for local governments and providing the assessor with timely information which is needed to ascertain if a change of ownership of real property has occurred and, if so, to determine the full cash value of that property on the date of the change in ownership." (See Rev. & Tax. Code, § 480.3.) To that end, the PCOR and the change of ownership statement require the party completing the form to disclose specific information relative to the transfer: "The information shall include, but not be limited to,

3

a description of the property, the parties to the transaction, the date of acquisition, the amount, if any, of the consideration paid for the property, whether paid in money or otherwise, and the terms of the transaction.  The preliminary change in ownership report shall not include any question that is not germane to the assessment function."  (See Rev. & Tax. Code, § 480.4; see also Rev. & Tax. Code, § 480.)

A PCOR is not a public document; it is not open for public inspection, and absent certain limited circumstances described under Revenue and Taxation Code section 480 in which disclosure is permitted, the information contained in the PCOR is kept confidential.  (See Gov. Code, § 27280, subd. (b).)  If the document evidencing the change in ownership (i.e., the deed) is presented to the recorder for recordation *without* the concurrent filing of the PCOR, the recorder may charge an additional recording fee of twenty dollars, and a change of ownership statement must be filed pursuant to Revenue and Taxation Code section 480 within 90 days from the date the change of ownership occurs.[3]  (Rev. & Tax. Code, § 480.3, subds. (b)& (e) & § 480.)

When it is filed with the recorder's office the PCOR receives a document number stamp and a date stamp to indicate that it has been filed.  A PCOR is used by the recorder's office to determine whether to collect a "transfer tax."  The PCOR is then separated from the deed and forwarded to the county assessor's office to determine whether the change of ownership warrants a re-assessment of the property.  A PCOR is retained for two years in the county assessor's office after it is received from the county recorder's office.

---

[3]    Pursuant to Revenue and Taxation Code section 480, "[t]he failure to file a change in ownership statement within 90 days from the date a written request is mailed by the assessor results in a penalty of either: (1) one hundred dollars ($100), or (2) 10 percent of the taxes applicable to the new base year value reflecting the change in ownership of the real property or manufactured home, whichever is greater, but not to exceed five thousand dollars ($5,000) if the property is eligible for the homeowners' exemption or twenty thousand dollars ($20,000) if the property is not eligible for the homeowners' exemption if that failure to file was not willful.  This penalty will be added to the assessment roll and shall be collected like any other delinquent property taxes, and be subject to the same penalties for nonpayment."  (Rev. & Tax. Code, § 480, subd. (c).)

A property appraiser from the Los Angeles County Assessor's Office testified in this case about the use of a PCOR by the assessor's office. The appraiser testified that the ownership department of the assessor's office examines PCORs to determine whether the transfer of property is a reappraisable event. If it is, then the PCOR is sent to an appraiser for evaluation. The appraiser examines the purchase price disclosed in the PCOR to determine whether that price represents the fair market value of the property. The appraiser also uses other data on sales of comparable property to aid in the determination. The appraiser testified that the benefit of the doubt as to value is given to the purchase price listed in the PCOR, but also noted that the transaction will receive additional scrutiny if that price does not reflect fair market value as it relates to other comparable properties. If the purchase price in the PCOR is accepted as to the value, that amount is entered in the tax roll, which is then used to determine the property taxes for the property.

### Charges and Evidence Against Appellants

Among the 31 counts filed against appellants,[4] they were charged with 19 counts of filing a false instrument in violation of section 115 and one count of conspiracy to file a false document based on appellants filing 19 PCORs in the Los Angeles County Recorder's Office with false information in them.

A representative of the Los Angeles County Recorder's Office, Brenda Winston, testified at trial that between 2001 and 2006 appellants presented PCORs for 19 separate properties that had been presented to the county recorder's office along with quitclaim deeds for those properties. According to Winston, in each PCOR, "Jesus Duran" was listed as the seller or transferor of the property and "Sofia Aguayo" was listed as the

---

[4] In January 2010, the Los Angeles District Attorney filed a 31-count Information, alleging that appellants committed: three counts in violation of Penal Code section 182, subdivision (a), subsection (3) (Counts 1 through 3), three counts in violation of Revenue and Taxation Code section 19705, subdivision (a), subsection (1) (Counts 4 through 6), four counts in violation of Penal Code section 182, subdivision (a), subsection (1) (Counts 7 through 9, and 29), 19 counts in violation of Penal Code section 115 (Counts 10 through 28), and two counts in violation of Penal Code section 132 (Counts 30 and 31).

5

buyer or transferee of the property. In each document, the box next to the question whether the transfer was between a husband and wife was marked "no." Each document indicated that the transfer was a purchase of property directly from the seller. The documents did not indicate the transfers were gifts or were from a family member. The property in each document listed a selling price. The selling prices were between $4,000 and $60,000. Each PCOR was signed at the bottom by Sofia Aguayo where it said, "I certify that the foregoing is true, correct, and complete to the best of my knowledge and belief."

With respect to each PCOR, Winston stated that she searched for the name "Jesus Duran" in the chain of title, but could not find it. Thereafter a letter was sent to Sofia Aguayo (listed as the buyer) notifying her that the deed was not in the chain of title. When a deed is not in the chain of title, as in the case of the 19 PCORs in this case, no action is taken to reassess the property, and the PCOR is placed into a "discard" folder in the county recorder's computer system rather than forwarded to the assessor's office.

During the trial, Mr. Aguayo conceded that he prepared the 19 PCORs subject to the charges in this case and that his wife, Mrs. Aguayo, signed them. With respect to the transactions reflected in each PCOR, Mr. Aguayo was the transferor and Mrs. Aguayo was the transferee. He testified that in each PCOR, next to the question whether the transfer was between a husband and wife, the document stated in parenthesis "addition of a spouse, death of a spouse, divorce settlement, et cetera." Mr. Aguayo marked "no" to the question because he thought it was not applicable. Mr. Aguayo admitted that he wrote on each PCOR that his name was "Jesus Duran" even though his entire name was "Jesus Duran Aguayo." He claimed that he was not trying to mislead anyone by omitting his entire name. Although no money was exchanged between Mr. and Mrs. Aguayo for the properties, Mr. Aguayo indicated on the PCORs that the exchanges were purchases because there was a transfer of property. Mr. Aguayo admitted that the PCORs included a box that said "other" which he could have checked, but he "never looked that far" on the PCORs. When Mr. Aguayo indicated on one of the PCORs that the purchase price for the property was $20,000, he claimed that he was merely indicating the amount he

6

had invested in the property. One of the PCORs indicated that there was a trust deed in the amount of $30,000 to be paid over 15 years at 10 percent interest with payments of $322.30. Mr. Aguayo testified that those numbers represented a loan he was trying to secure to improve the property.

Mrs. Aguayo also testified during the trial. She admitted that she signed the PCORs but also claimed she did not prepare the documents or review them before signing them.

### Appellants' Convictions and Sentences

After a jury trial, appellants were convicted of three counts of filing a false tax return (Rev. & Tax Code, § 19705, subd. (a)(1); counts 4-6), three counts of conspiracy to file a false tax return (Pen. Code § 182, subd. (a)(1); counts 7-9), 19 counts of filing a false document (§ 115; counts 10-28), and one count of conspiracy to file a false document (§ 182, subd. (a)(1); count 29.)

The trial court sentenced appellants in count 7 to the upper term of three years in county jail (§ 1170, subd. (h)) and ran the remaining counts concurrently. During sentencing, the prosecution requested that appellants "surrender all real estate and contractor's licenses and refrain from taking properties via adverse possession from this day forward." The court granted the request and entered the order, noting the appellants "can, I'm sure, reapply for licensing at the appropriate time, but at this point they have to give up their licensing."

Appellants appeal from the judgments.


*DISCUSSION*

## I.  *A PCOR is an instrument under Section 115 of the Penal Code*

Appellants contend insufficient evidence supports their 19 convictions in counts 10-28 for violating section 115. Specifically, they argue the evidence is insufficient as a

7

matter of law to show that a PCOR is an "instrument" within the meaning of section 115.[5] As we shall explain, we disagree.

### A. Section 115: Offering a False Instrument for Filing in a Public Office

Section 115, subdivision (a) provides: "Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony."

Before this court there is no dispute that appellants "filed" the 19 PCORs for the purposes of section 115 nor do they dispute that the county recorder's office qualifies as a "public office." Likewise they are not specifically challenging the sufficiency of the evidence with respect to the falsity of the information contained in the PCORs at issue. Rather the dispute here centers on whether a PCOR qualifies as an "instrument" under section 115.

Section 115 "punishes offering a false instrument for filing." (*People v. Tate* (1997) 55 Cal.App.4th 663, 664; see also *People v. Gangemi* (1993) 13 Cal.App.4th 1790, 1795.) "'The core purpose of Penal Code section 115 is to protect the integrity and reliability of public records.' [Citations.] This purpose is served by an interpretation that prohibits any knowing falsification of public records." (*People v. Feinberg* (1997) 51 Cal.App.4th 1566, 1579; *People v. Parks* (1992) 7 Cal.App.4th 883, 887 [Section 115 was enacted in 1872 to protect the integrity of the judicial process and public records].)

The term "instrument" in section 115 is not defined by statute. Instead, our courts have applied various case-specific definitions to the term over the years. Our Supreme Court had an opportunity to review the evolution of the definition of the term recently in *People v. Murphy* (2011) 52 Cal.4th 81, 89:

---

[5] Although she filed a separate appellate brief in this matter, Mrs. Aguayo has joined in all of the arguments presented in Mr. Aguayo's brief.

8

There currently is no precise, generally accepted definition of the term "instrument" for purposes of Penal Code section 115. Early decisions interpreted the term narrowly. *People v. Fraser* (1913) 23 Cal.App. 82, 85, 137 P. 276 (*Fraser*), defined an instrument, as used in section 115, as a written and signed agreement, "delivered by one person to another, transferring the title to or creating a lien on real property, or giving a right to a debt or duty." Cases following *Fraser* concluded that a variety of documents not meeting this definition were not "instruments" within the meaning of section 115. (See, e.g., *People v. Fox* (1977) 73 Cal.App.3d 178, 180-182, 140 Cal.Rptr. 615 [affidavit of voter registration]; *People v. Olf* (1961) 195 Cal.App.2d 97, 101, 15 Cal.Rptr. 390 [application for a permit to issue securities]; see also *People v. Wood* (1958) 161 Cal.App.2d 24, 28–29, 325 P.2d 1014 [questioning whether documents containing false information filed with the Department of Motor Vehicles were instruments under § 115, but holding that even if they were, prosecution under § 115 was precluded by special Veh. Code section making the filing of such documents a misdemeanor].)

More recent cases construing Penal Code section 115, however, have rejected *Fraser*'s definition and have expanded the meaning of "instrument" to include a broader range of documents that are filed or registered with a public entity. (See, e.g., *People v. Hassan* (2008) 168 Cal.App.4th 1306, 1315–1316, 86 Cal.Rptr.3d 314 [confidential marriage certificates]; [*People v. Powers* (2004)] 117 Cal.App.4th [291], 294–295, 11 Cal.Rptr.3d 619 [fishing activity records filed with Dept. of Fish & Game]; *People v. Tate* (1997) 55 Cal.App.4th 663, 667, 64 Cal.Rptr.2d 206 [work referral forms documenting hours worked by probationer on community service project]; *People v. Parks*[, *supra*,] 7 Cal.App.4th at p. 885, 9 Cal.Rptr.2d 450 [temporary restraining order]; *Generes v. Justice Court* (1980) 106 Cal.App.3d 678, 682, 165 Cal.Rptr. 222 [deed filed by defendant, purporting to convey an easement to herself].) (*People v. Murphy, supra,* 52 Cal.4th at pp. 89-93.)

The *Murphy* court further observed that the more recent cases have rejected *Fraser*'s restrictive definition of "instrument" without attempting to create an alternative, comprehensive definition of that term. (See, e.g., *People v. Parks, supra,* 7 Cal.App.4th at p. 887 ["Whatever else may be meant by the word 'instrument,' on these facts we find

9

that protection of judicial and public records such as the documents in this case was clearly within the legislative intent of section 115."].)  In *People v. Powers, supra,* 117 Cal.App.4th at page 297, the court endorsed the view that a document is an instrument if "'the information contained in the document is of such a nature that the government is required or permitted by law, statute or valid regulation to act in reliance thereon; or . . . the information contained in the document materially affects significant rights or duties of third persons, when this effect is reasonably contemplated by the express or implied intent of the statute or valid regulation which requires the filing, registration, or recording of the document.'  [Citation.]"  Thus, in deciding whether section 115 applies, the more recent cases have focused on the purpose of the statute, which is the "protection of judicial and public records."  (*People v. Parks, supra*, 7 Cal.App.4th at p. 887, see also *People v. Tate*, *supra*, 55 Cal.App.4th at p. 667.)

Although the *Murphy* court expressly did not adopt a definition of the term instrument, the Court analyzed this issue before it by looking at how the document in question—a vehicle theft report—and the information disclosed in it is *used* by the public agency where it was filed.  (See *People v. Murphy, supra,* 52 Cal.4th at p. 94.)  Likewise, in *People v. Powers, supra*, 117 Cal.App.4th at page 297, the court concluded the fishing records at issue were instruments within the meaning of section 115 because (1) the Department of Fish and Game relied on the records to set fishing limits, which materially affect commercial fishing enterprises and recreational anglers; and (2) the management of fisheries demanded accurate information.  In *People v. Hassan, supra*, 168 Cal.App.4th at page 1316, the court concluded that confidential marriage certificates are instruments "given the requirement that they be recorded, their importance, and the vast legal consequences that flow from them."  With these principles in mind, we turn to appellants' contentions.

### B. Analysis

Appellants argue that the PCOR is not an instrument under section 115 because: (1) PCORs do not "compromise" the integrity of judicial or public records; (2) PCORs are not "public documents"; (3) filing a PCOR is optional; and (4) it is not a legally significant document – no legal consequences result from its submission. Appellants' contentions lack support in both law and fact.

Pursuant to statute and practice, the PCOR requires the disclosure of certain information about the transfer of the property that is used by the county recorder to determine whether a transfer tax should be collected for the transfer. In addition the assessor's office relies on the information disclosed in the PCOR to assist in the determination of whether the transfer of property is a re-appraisable event and also as an aid in determining the fair market value of the property. According to the appraiser who testified at trial, deference may be given to the purchase price listed in the PCOR and if the purchase price in the PCOR is accepted as to the value, that amount is entered in the tax roll, which is then used to determine the property taxes for the property. That the assessor may also refer to other information to confirm the value of the property does not undermine the fact that appraisers routinely use and rely on PCORs to assist them in performing legally mandated property assessment duties. Thus, in our view, the information contained in a PCOR has significant consequences for public tax records.

For these reasons, we conclude that a PCOR is an instrument within the meaning of section 115 because the information contained in a PCOR is used by public agencies to determine the appropriate property tax to assess to real property transfers. The reliability of the information disclosed in a PCOR affects the integrity of the public tax rolls. The central purpose of section 115 is to protect the integrity and reliability of public records, and this purpose is served by an interpretation of section115 that prohibits any knowing falsification of information disclosed in a PCOR.

11

Furthermore, the fact that a PCOR is a confidential document that is not open for public inspection does not change the analysis. Section 115 applies to documents submitted for filing in a public office, but its protection has never been limited only to those instruments available and open for direct public inspection. (*People v. Powers, supra*, 117 Cal.App.4th at p. 297 [section 115 applied to confidential records]; *People v. Garfield* (1985) 40 Cal.3d 192, 195 [it is a violation of section 115 to knowingly offer a false will for probate even if the will is not itself a public document and does not deceive the public].)

Finally, in reaching this conclusion we reject appellant's contention that a PCOR lacks legal significance, and thus is not an instrument because a $20 fee may be submitted in lieu of filing a PCOR and thus filing a PCOR is "optional." First, the contention that the PCOR lacks legal import is belied by evidence in this case that both the county recorder and assessor use and rely on the information in the PCOR to perform their respective statutory functions. Indeed the information sought in the PCOR must be disclosed at some point after the transfer of the property, either at the time of recording the deed or within 90 days of the change of ownership. Thus, although filing a PCOR may be technically "optional," that circumstance does not undermine the purpose or usefulness of a PCOR when it is filed. Based on the record in this case the information contained in the PCOR is of such a nature that the government is permitted by statute to act in reliance upon it.

Second, appellants have no authority for the proposition that section 115 applies only to mandatory (rather than optional) filings. "Section 115, by its terms, limits prosecution for filing false or forged instruments to those instruments which, 'if genuine, *might* be filed, registered, or recorded' under state or federal law. Recording a false or forged instrument is not actionable under section 115 if the instrument was not legally entitled to be recorded. [Citation.] (Italics added.)" (*People v. Powers, supra,* 117 Cal.App.4th at p.295.) The test is whether a law *authorizes* the recording of the instrument, not whether the law *mandates* the recording or filing of the instrument.

12

(*People v. Harrold* (1890) 84 Cal. 567, 569-570 [no law allows for the recording of an assignment of interest in letters of patent in the office of the county recorder, therefore section 115 is inapplicable since even if the instrument were genuine, it would not be entitled to be recorded under the law of the state].)  This requirement is met here, where the law authorizes the filing of a PCOR.  (See Rev. & Tax. Code, § 480.3.)

In view of all of the foregoing, sufficient evidence supports appellants' 19 convictions for violating section 115 based on filing PCORs containing false information.

## II. The Sentences Imposed that Required Appellants to Surrender Their Real Estate Licenses and Refrain From Obtaining Property Through Adverse Possession Are Unauthorized

The authority to designate the punishment for crimes is vested exclusively in the legislature.  (*People v. Tanner* (1979) 24 Cal.3d 519, 519.)  The power of the trial court to sentence a criminal defendant is granted and limited by statute; the duty of the court is "to determine and impose the punishment prescribed."  (§ 12.)  Thus, the sentencing court cannot impose a sentence that is not authorized by statute and "has no inherent authority to devise ad hoc penalties for crimes."  (*People v. Montano* (1992) 6 Cal.App.4th 118, 123 [holding court exceeded its authority in ordering defendant to pay probation costs], superseded by statute, *People v. Orozco* (2011) 199 Cal. App.4th 189, 191, 131.)

Appellants contend, and the Attorney General properly concedes, that the trial court's orders requiring appellants to surrender their real estate licenses and refrain from taking properties through adverse possession were not authorized sentences pursuant to sections 115, 182 or Revenue and Taxation Code section 19705 under which appellants were charged and convicted.  Indeed, by statute the authority to bar a convicted felon from practicing as a real estate agent, broker or salesperson is vested in the Department of Real Estate.  (Bus. & Prof. Code, §§ 10003, 10071.)

13

The California Supreme Court has held that an unauthorized sentence may be corrected at any time even if there was no objection in the trial court. (*In re Sheena K.* (2007) 40 Cal.4th 875, 886; *People v. Smith* (2001) 24 Cal.4th 849, 854.) Such an unauthorized sentence may be corrected even where, as here, it is raised for the first time on appeal. (*People v. Smith, supra*, 24 Cal.4th at p. 854.) We therefore strike the trial court's orders requiring appellants to surrender their real estate licenses and refrain from taking properties through adverse possession.

## *DISPOSITION*

The judgments are hereby modified to strike the orders requiring appellants to surrender their real estate licenses and refrain from taking properties through adverse possession. Upon remittitur issuance, the clerk of the superior court is directed to prepare amended abstracts of judgment for each appellant reflecting these modifications and to forward copies to the California Department of Corrections and Rehabilitation. The judgments are affirmed in all other respects.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**

**ZELON, J.**

14