Filed 9/2/14  P. v. Robertson CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LACHELLE ROBERTSON,<br><br>    Defendant and Appellant. | B245645<br><br>(Los Angeles County<br> Super. Ct. No. MA052048) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard E. Naranjo, Judge.  Affirmed.

Catherine White, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Mark E. Weber, Deputy Attorneys General, for Plaintiff and Respondent.

**INTRODUCTION**

A jury convicted defendant Lachelle Robertson of grand theft of personal property (Pen. Code, § 487, subd. (a)) and procuring and offering false or forged

instrument (§ 115, subd. (a), hereinafter, § 115 (a)).[1]  The trial court sentenced her to 32 days in county jail and placed her on probation for five years.  Defendant appeals contending:  (1) there was insufficient evidence to sustain either count; (2) the trial court committed prejudicial error in failing to provide jury instructions on the offense of theft by false pretense; (3) if the trial court did not have a sua sponte duty to instruct on theft by false pretense, defense counsel's failure to request the instruction constituted ineffective assistance of counsel.  We affirm the judgment.

### FACTS

In 2004, defendant applied for supplemental security income (SSI) benefits from the Social Security Administration (SSA) for her disabled son.  Nahib Noor, an SSA Claims representative, interviewed defendant either in person or by phone.  Noor had defendant attest that the information provided was true.  Noor input defendant's information, such as income, into a computer and defendant was informed that any changes to income or resources would have to be reported to SSA within "10 days after the month it happens."  In 2005, defendant contacted SSA to inform it of an address change.

In January 2007, at a hearing in family court, the father of defendant's son (hereinafter, Harvey) was ordered to pay child support in the amount of $384 a month.  Payments of child support began in April 2007 and ended in August 2010, when Harvey gained custody of his son.

On January 23, 2008, an SSI claims representative, Vicky Dykes conducted a redetermination interview with defendant, either over the phone or in person, to determine if defendant was still eligible for SSI benefits.  Just as in the initial SSI

---

[1]     Unless otherwise indicated, all further statutory references are to the Penal Code.

2

application, the information provided by defendant was provided under oath. Defendant reported that her son did not receive any income other than the SSI benefits and she did not report any changes in her income. Dykes informed defendant that if any information changed, such as if her income changed or she received any financial aid from others, she was obligated to report those changes to the SSA.

SSA initiated an investigation in 2010, after Harvey reported to SSA that he had been paying child support since 2006.[2] Carlos Gonzalez, an agent investigator in SSA's Office of the Inspector General, interviewed defendant at her home in September 2010. During the interview, the agent showed defendant a series of documents and had her initial the ones that she recognized. Defendant recognized and initialed the initial application for SSI benefits. She also recognized the redetermination report from 2008, but she refused to initial it. At the end of the interview, the agent then asked defendant to write out a statement summarizing what they discussed during the interview. Defendant wrote that she had applied for social security, she was informed of the reporting responsibilities, and she understood them. She also wrote that she began to receive child support in 2007 and did not report the child support because she was told that the courts would inform SSA about the additional income of $384 a month. She wrote that she would provide documents supporting her understanding that the courts would inform SSA of the child support, and if she could not, she would pay the money back to SSA. Finally, she apologized for any inconvenience she may have caused SSA. Defendant dated and signed the document, acknowledging that the document was true, accurate, and complete to the best of her knowledge and belief.

---

[2] We note that the hearing for child support was not held until 2007.

Defendant had been receiving the maximum allowed benefits from the SSA; by failing to report the child support income, defendant received $10,725.35 more in benefits from the SSA than she was entitled to receive.

## DISCUSSION

A. *Section 115 (a) Conviction*

A jury convicted defendant of violating section 115 (a) by offering a false instrument -- the SSA redetermination packet -- to be filed with a public office. Section 115 (a) reads as follows: "Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony."

Defendant argues there is insufficient evidence to support the conviction because: (1) the SSA redetermination packet was not an "instrument" that defendant "procured or offered" to be "filed, registered, or recorded" as a public record; and (2) there was insufficient evidence that the instrument was false. We disagree.

1. *Meaning of Section 115 (a)*

(a) *Instrument*

Defendant argues that the SSA redetermination packet is not an "instrument" within the meaning of section 115 (a). Based upon the purpose of the statute and the purpose of the redetermination packet, we conclude that it is.

"As originally enacted, section 115 was one of five provisions forming a chapter of the Penal Code entitled "Forging, Stealing, Mutilating, and Falsifying Judicial and Public Records and Documents." The object of the provisions was to

4

protect the integrity of judicial and public records." (*People v. Tate* (1997) 55 Cal.App.4th 663, 666 (*Tate*), citing *People v. Parks* (1992) 7 Cal.App.4th 883, 887.)

In *People v. Tate*, this court relied upon the statutory purpose to conclude that a work referral form, containing the number of community hours a probationer completed, was an instrument under section 115 (a). (*Tate*, *supra*, 55 Cal.App.4th at p. 667.) In that case, the defendants knowingly lied on their work referral forms about the hours they had completed, and filed the form with the court to show that they had completed their probation conditions. (*Ibid*.) We reasoned that the defendants' false documents were intended to "induce the court to credit them with the satisfaction of a probation term they had not satisfied," and concluded that the work referral forms were "instruments" under the meaning of section 115 (a). (*Ibid*.)

In *People v. Powers* (2004) 117 Cal.App.4th 291 (*Powers*), the court held that fishing activity records containing false statements were instruments under section 115 (a). (*Id*. at p. 298.) The court in *Powers* cited with approval a case from the Washington Supreme Court, involving a virtually identical statute, in which the court provided guidelines to determine what constituted an "instrument." As *Powers* explained, the Washington high court "determined that a document required or permitted to be filed, registered, or recorded in a public office is an instrument if '(1) the claimed falsity relates to a material fact represented in the instrument; and (2a) the information contained in the document is of such a nature that the government is required or permitted by law, statute or valid regulation to act in reliance thereon; or (2b) the information contained in the document materially affects significant rights or duties of third persons, when this effect is reasonably contemplated by the express or implied intent of the statute or valid

5

regulation which requires the filing, registration, or recording of the document.'" (*Powers*, *supra*, 117 Cal.App.4th at p. 297, quoting *State v. Price* (1980) 94 Wash.2d 810, 999.) The *Powers* court observed that in *Price*, the Washington Supreme Court held that fish receipts that falsely claimed that the fish at issue were caught by Treaty Indians in treaty waters were considered "instruments" because "the government necessarily relied and acted upon the falsely transmitted fishing information in its resource management, and the false information could adversely affect the allocation of fish to Treaty Indians." (*Powers*, *supra*, 117 Cal.App.4th at p. 297.) *Powers* found that "[a] similar conclusion obtains here" because the government relied upon accurate information on the fishing activity records to set fishing limits that "materially affect commercial fishing enterprises and recreational anglers alike." (*Ibid*.) Thus, the court concluded that the fishing activity records were instruments within the meaning of section 115 (a). (*Ibid*.)

In this case, SSA relies on the income information provided by the beneficiary and reported in the redetermination packet to calculate and provide the correct amount of SSI benefits. By underreporting her income, a beneficiary, such as defendant, receives more benefits than regulations permit. Therefore, we conclude that the redetermination packet is an instrument within the meaning of section 115 (a).

(b) *"Procured or Offered" to be "Filed, Registered, or Recorded"*

Defendant argues that she did not "procure or offer" the redetermination packet to be "filed, registered, or recorded." But the evidence shows that the redetermination packet was filled out using information provided by defendant. That information was recorded as a form in a SSA database. The SSA representative printed out the form and mailed it to the defendant to confirm that

6

the information on the form in the SSA database was correct. Thus, defendant's participation in the redetermination process constitutes offering a document to be filed, registered, or recorded in a public office. The fact that the redetermination packet is not recorded as a public record is irrelevant. (*Powers*, *supra*, 117 Cal.App.4th at p. 297.)

(c) *"False Instrument"*

Defendant next contends that a redetermination packet that includes false information is not a "false instrument." Defendant notes that section 115 (a) penalizes the offering of a "false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States." She argues that the use of the phrase "if genuine" in the statute means that for an instrument to be "false" it must be a counterfeit document, a document that is not authentic, or a document that pretends to be something other than what it is. Defendant's interpretation would render the word "false" superfluous. We must avoid an interpretation of a statute that renders any part of it superfluous. (*Klein v. United States of America* (2010) 50 Cal.4th 68, 80.) Therefore, we conclude that "false or forged instrument" as used in section 115 (a) includes an instrument containing false information.

ii. *Sufficiency of Evidence of Falsity*

Defendant argues that there is insufficient evidence that the redetermination packet contained false information because records from the child welfare agency indicated that defendant did not begin to receive child support payments until after the redetermination interview. We disagree.

7

The test of whether evidence is sufficient to support a conviction is "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (*People v. Holt* (1997) 15 Cal.4th 619, 667.) In making this assessment the court looks to the whole record, not just the evidence favorable to the defendant, to determine if the evidence supporting the verdict is substantial in light of other facts.

In this case, defendant admitted at trial that she had attended the hearing in family court in 2007 at which Harvey, her son's father, was ordered to pay child support. Harvey testified that the money for his child support payments were automatically deducted from his paychecks beginning in 2007, and those deductions continued until he obtained custody of his son in 2010. Defendant wrote and signed a statement in 2010 admitting that she began receiving child support payments in 2007. Although defendant is correct that documents produced by a child support officer indicate that payments were not made to defendant until October 2008, it appears that those records were not complete, since they show withdrawals from Harvey's paychecks from 2007 only up to October 23, 2008, followed by payments to defendant a few days later. A reasonable jury could conclude, based upon defendant's own admissions and Harvey's testimony -- as well as testimony by the child support officer who produced the document, who admitted that she could not say that the information was completely accurate -- that the child welfare agency document did not accurately reflect when defendant started to receive child support. In short, we conclude there is sufficient evidence for a reasonable jury to find, beyond a reasonable doubt, the defendant knowingly offered a false instrument to be filed with SSA.

8

B.  *Section 487 Conviction*

Defendant challenges her conviction for grand theft on the ground that there is insufficient evidence that she lied to SSA in order to obtain SSI benefits.  We disagree.

Section 484, subdivision (a) defines theft as:  "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft."

Section 487, subdivision (a) provides that grand theft is committed "[w]hen the money, labor, or real or personal property taken is of a value exceeding nine hundred fifty dollars ($950)."

As explained above, evidence was presented that defendant made false representations to an SSA representative during the 2008 redetermination review that her son did not receive any other income other than the SSI benefits, even though she began receiving child support payments in 2007.  An SSA representative testified that by failing to inform SSA of the income change, defendant received an excess amount of $10,725.35 in SSI benefits.  Thus, there is substantial evidence that, through a false representation, defendant defrauded SSA of more than $950.

9

C. *Jury Instruction*

The trial court instructed the jury on theft by larceny as follows:

"1. The defendant took possession of property owned by someone else;

"2. The defendant took the property without the owner's or owner's agent's consent;

"3. When the defendant took the property she intended to deprive the owner of it permanently; AND

"4. The defendant moved the property, even a small distance, and kept it for any period of time, however brief." (See CALCRIM No. 1800.)

Defendant contends that the grand theft conviction must be reversed because the prosecution's theory of the case was based upon theft by false pretenses, and the trial court failed to instruct on that theory. We conclude that, even if the trial court had a sua sponte duty to instruct on theft by false pretenses, any error was harmless.

Section 484, subdivision (a) was amended in 1927 to consolidate the crimes of larceny, false pretenses, and embezzlement into the single crime of theft. (*People v. Williams* (2013) 57 Cal.4th 776, 785.) Juries no longer had to be concerned about the technical differences between the different types of theft, as long as a general verdict of guilt was found and an "unlawful taking" was proved. (*Id.* at p. 786.) However, "the combination of 'several common law crimes under the statutory umbrella of "theft" did not eliminate the need to prove the elements of the particular type of theft alleged.'" (*People v. Nazary* (2010) 191 Cal.App.4th 727, 741.)

10

In order to find defendant guilty of theft by false pretenses, "it must be shown: (1) that the defendant made false pretense or representation, (2) that the representation was made with intent to defraud the owner of his property, and (3) that the owner was in fact defrauded in that he parted with his property in reliance upon the representation." (*Perry v. Superior Court* (1962) 57 Cal.2d 276, 283.) In addition, "the defendant cannot be convicted if the false pretense was expressed in language unaccompanied by a false token or writing, unless the pretense, or some note or memorandum thereof is in writing, subscribed by or in the handwriting of the defendant, or unless the pretense is proven by the testimony of two witnesses, or that of one witness and corroborating circumstances." (§ 532, subd. (b).)

Although the jury in this case was instructed on theft by larceny rather than theft by false pretenses, there is no question that the jury would have found defendant guilty of theft by false pretenses had it been instructed on that theory. First, by convicting defendant of offering a false instrument under section 115 (a), the jury necessarily found that she knowingly gave false information to SSA. Second, there is no dispute that SSA relied upon that false information to compute the SSI benefits to which she was entitled, and that SSA paid more in benefits than defendant was entitled to receive. Finally, the SSA's claims representative's testimony that defendant reported no change in her income during her 2008 redetermination interview was corroborated by the redetermination packet, which, according to SSA investigator Gonzalez, defendant acknowledged she had seen.

We recognize that some appellate courts have found reversible error where the trial court instructs on theft by larceny when the evidence instead supports theft by false pretenses or embezzlement. (See, e.g., *People v. Beaver* (2010) 186 Cal.App.4th 107; *People v. Curtin* (1994) 22 Cal.App.4th 528.) Those cases were examined in *People v. Fenderson* (2010) 188 Cal.App.4th 625, and the court

11

concluded there is no basis for a rule of per se reversal in cases in which the jury was instructed on the wrong theory of theft. Instead, the court held that "a theft conviction may be upheld as long as there is sufficient evidence, under any theory of theft, to support the conviction, even if the jury was not instructed on the relevant theory of theft," especially when there is evidence of corroboration in the record. (*Id.* at p. 637, citing *People v. North* (1982) 131 Cal.App.3d 112, 117-118; *People v. Kagan* (1968) 264 Cal.App.2d 648, 658; *People v. Counts* (1995) 31 Cal.App.4th 785, 792.) We agree. Therefore, we find that any error in instructing the jury on theft by larceny rather than theft by false pretenses was harmless.

D. *Ineffective Assistance of Counsel*

Defendant contends that if the trial court did not have a sua sponte duty to give instruction on theft by false pretenses, defense counsel's failure to request the instruction constituted ineffective assistance of counsel, and thus requires reversal of the conviction. We disagree.

"To prevail on a claim of ineffective assistance of counsel, a defendant '"must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice"' [Citation.] . . . [T]he record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citation.]" (*People v. Maury* (2003) 30 Cal.4th 342, 389.) An appellate court deciding a claim of ineffective assistance "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,

12

. . . that course should be followed." (*Strickland v. Washington* (1984) 466 U.S. 668, 697; *In re Cox* (2003) 30 Cal.4th 974, 1019-1020.) As explained above, any error in failing to instruct the jury on theft by false pretenses was harmless. Therefore, defendant was not prejudiced by her counsel's failure to request that such an instruction be given.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.


We concur:


MANELLA, J.                EDMON, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.